## WILLIAM H. BROADWELL *et al.*

*v.*

## THE PEOPLE, etc., for the use of Morgan County.

1. CONSTITUTIONAL LAW—*compensation of county officers.* The phrase "county board," as used in article 10, section 10, of the constitution of 1870, which requires such board to fix the compensation of all county officers, etc., was not designed to embrace any one particular body of persons, but means the body authorized to transact county business. It embraces the board of supervisors in counties under township organization, and the board of county commissioners to be elected in counties not under township organization, and also applied to the county courts in such counties until they were superseded.

2. Thus, where the county court of a county not under township organization, before that court was superseded by the election of a board of county commissioners, fixed the compensation of the sheriff of the county who was elected in 1872, it was *held*, that such court was authorized to do so under section 10, article 10, of the constitution, and that the county was entitled to all fees, etc., pertaining to the office in excess of such compensation.

3. The compensation system by the constitution was designed to apply to the county officers to be elected in November, 1872, in all the counties of the State except Cook county, whether they were under the township system or not, and to supersede the fee system which had prevailed before.

4. COUNTY COURTS. The fourth section of the schedule to the consti-
tution, which provided that county courts in counties not under township
organization should exercise "their *present* jurisdiction" until superseded
by the board of county commissioners, was a limitation upon the power
to change the jurisdiction from county to civil or criminal business, and
was not designed as a prohibition of the enactment of additional laws regu-
lating such court or enlarging its powers in matters of county business.

5. OFFICE AND OFFICERS—*compensation.* The offices of sheriff and col-
lector in counties not under township organization are not separate and
distinct offices within the meaning of the constitutional provision requir-
ing the county board to fix the compensation, and therefore when the
sheriff's compensation is fixed at $2000, it includes also his compensation
as collector.

APPEAL from the Circuit Court of Morgan county; the
Hon. CYRUS EPLER, Judge, presiding.

Messrs. DUMMER & BROWN, and Messrs. MORRISON, WHIT-
LOCK & LIPPINCOTT, for the appellants.

Mr. JAMES K. EDSALL, Attorney General, Mr. HENRY
STRYKER, and Mr. GEO. W. SMITH, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit brought against William H. Broadwell,
sheriff of Morgan county, in this State, and his sureties, on
his bond given as collector for Morgan county of the revenue
levied for the year 1872. Broadwell was elected such sheriff
in November, 1872, and having been qualified as sheriff, exe-
cuted, as collector, the bond sued on.

Morgan county was not under township organization, and
in September, 1872, the county court of the county fixed the
compensation of the sheriff of that county at the sum of $2000
per annum. The only question presented is, whether Broadwell
was entitled to retain, or was bound to pay into the county
treasury, all the commissions allowed by law to the collector,
in excess of his said compensation of $2000.

Section 10, article 10, of the present constitution of 1870,
provides that the county board shall fix the compensation of

all county officers, etc., and that all fees or allowances by them received in excess of their said compensation shall be paid into the county treasury.

The 6th section of the same article provides that, "At the first election of county judges under this constitution, there shall be elected in each of the counties in this State, not under township organization, three officers, who shall be styled 'The Board of County Commissioners,' who shall hold sessions for the transaction of county business as shall be provided by law." The first election of county judges under the constitution took place in November, 1873.

At the time of the adoption of the constitution, there were, as we understand, 66 counties in the State under township organization, and 36 not under such organization. The constitution made provision for the adoption or discontinuance of township organization as the respective counties might from time to time elect. Under township organization, the body for the transaction of county business was styled the "Board of Supervisors." In counties not under township organization, it was the county court, which, in such counties, after the adoption of the constitution, was to be superseded by a body to be termed "The Board of County Commissioners," to be elected for the first time in November, 1873.

Now what is the proper construction of the phrase "county board," as used in section 10, article 10, of the constitution? It evidently is not to be confined to any one particular body of persons. It will be acknowledged that it embraces both the board of supervisors and the board of county commissioners, bodies very differently constituted. Is it to be confined to those two particular bodies, or may it not also embrace the county court, in counties not under township organization, which, in such counties, was to be superseded by the board of county commissioners, and until so superseded, would, in such counties, be the body for the transaction of the county business? The more natural construction, no doubt, would be, that the term "county board" referred to the above

named "boards," as they were the only two bodies of county officers to whom, in such connection, the term "board" had been applied by the constitution and the laws, or by usage; and that might well be held as the proper construction, were the county court to continue as a co-existing tribunal, or were it indifferent, as respects results, which one exercised the power given. But the adoption of this construction would lead to this consequence, that section 10, article 10, would take effect in the counties under township organization, before it did in the counties not under such organization. The system of a fixed compensation of county officers would be in force in the former counties for a year and more, while in the latter counties the fee system would be prevailing.

The compensation system by the constitution was to apply to the county officers elected in November, 1872. But if, in counties not under township organization, the county court could not fix the compensation of these officers, but only the board of county commissioners, which was to be elected, and which would not be elected until in November, 1873, then the going into effect of the system of a fixed compensation of county officers in these counties would be delayed until November, 1873, or longer. This would be creative of the very evil against which the present constitution is most especially levelled, special legislation.

There is no so marked feature of this instrument as its hostility to special laws and partial legislation, and its purpose to secure the establishment of general and uniform laws. A construction which would avoid such unequal result as before mentioned should be adopted, if it well may be consistently with the language used.

We perceive no such necessity as limits the term "board" to the board of supervisors and the board of county commissioners, and excludes its application to the county court which then existed in counties not under township organization. Webster, in his dictionary, gives this as one of the definitions of the term "board:" "A body of men constituting a quorum;

a court or council, as, a board of trustees, a board of officers,"
etc.   Under this signification may well be embraced as the
"county board" this county court, composed of a county
judge and two designated justices of the peace—the body of
officers which existed in a county not under township organi-
zation, and which was, by the law of February 12, 1849, con-
stituted to sit as a county court, "for the transaction of county
business."

In determining the construction, we may look to the defi-
nition of the term, the general spirit and scope of the consti-
tution, and the subject matter.   The power so given to the
"county board" is to fix the compensation of county officers.
It properly belongs to the body which has the transaction of
the business of the county, and the management of its fiscal
affairs.   This the county court has, until it shall be superseded
by the board of county commissioners.   The power to fix
compensation may be exercised by the one body as well as
the other, and there is no reason why it may not be exercised
by the county court until it is supplanted by the board of
county commissioners, and the public interest requires that
it should be exercised at the earliest practicable period.

We think there is too much of literalism in the construc-
tion which would confine the meaning of the phrase "county
board" to the two boards of supervisors and of county com-
missioners; that it is unnecessary so to do; and we are of
opinion that the reasonable and fair interpretation here is,
that "county board" means the board or body of officers
which in any county is authorized to transact the county busi-
ness; that in counties under township organization, it refers
to the board of supervisors; in counties not under township
organization, for the present it means the county court, con-
sisting of the county judge and associate justices of the peace,
who, for the present, were authorized to transact the county
business; and that it also embraces the board of county com-
missioners, which, in counties not under township organiza-
tion, were soon to supersede the county court in the exercise

of these powers. Under this construction, section 10, article 10, would become operative throughout the entire State at the same time. A body then existed in each of the counties in the State, which could, at the same time, exercise the powers specified in section 10 for fixing the compensation of county officers.

The 4th section of the schedule to the constitution is insisted on by appellants' counsel as being opposed to this construction, which is in these words:

"County courts, for the transaction of county business in counties not having adopted township organization, shall continue in existence and exercise their present jurisdiction until the board of county commissioners provided in this constitution is organized in pursuance of an act of the General Assembly."

It is said that this negatives the idea that the county courts could exercise any other than their present jurisdiction, and that fixing the compensation of county officers would be adding to their jurisdiction. It is sufficient, on this head, to refer to the case of *Shaw et al.* v. *Hill et al.* 67 Ill. 455, where it was held that the act of 1872, to provide for the removal of county seats, in conferring upon the county courts a new authority to order an election in regard to the removal of a county seat, was not in conflict with this section of the schedule; that the words "exercise present jurisdiction" were not a prohibition upon the legislature in the enactment of any additional laws regulating such courts, but were to be regarded as a mere limitation upon the power to change the jurisdiction from county business to civil or criminal causes.

Reference is also made to section 8, article 9, of the constitution, that "county authorities shall never assess taxes the aggregate of which shall exceed 75 cents per $100," etc. Stress is laid upon the use here of the words "county authorities." It is said the purpose was here to use terms that would include the old county court, the board of supervisors and the board of county commissioners, and that the inference

is, that the framers of the constitution understood that county board would not include county courts, and so a more generic term was used.

The two sections in question, the one forbidding the commission of an act by any person or power, and the other directing the doing of an act by a certain body, are so dissimilar from each other in purpose and scope, that no such inference as urged can justly be drawn.

The last cited section was for the prohibition of the imposition of taxes by county authority beyond a certain extent; and it was fit to use the broad terms "county authorities," which were comprehensive enough to include all the then established or proposed or future systems of county government, as also any county officer, so that there could be no room for evasion. But section 10, article 10, requires an act to be done by some tribunal of the county, and although the county court was a county authority, the substitution of the phrase "county authority" for "county board" might lead to some confusion, as, for example, the county judge of the county was a county authority.

The further position is taken by appellant that the sheriff and collector are not, as respects fees and commissions, one and the same officer ; that the commissions allowed by law to the collector are in addition to the compensation as sheriff; and that even if the compensation of Broadwell as sheriff was legally fixed by the county court at $2000 per annum, he would be entitled, in addition thereto, to commissions as collector. This point has been, in principle, adjudged adversely to the claim of appellant, in the case of *Kilgore* v. *The People, ante,* p. 548. It was there held that, in counties under township organization, the office of county collector was not a distinct one from that of county treasurer, and that the compensation of the treasurer, which had been fixed by the board of supervisors of the county, included his compensation as collector, and was all the compensation to which he was in any way entitled, both as treasurer and county collector.

In counties ·not under township organization, the offices of sheriff and county collector stand in the same relation to each other as do those of county treasurer and county collector in counties under township organization; and the same principle which determines that the compensation fixed for the treasurer includes that of collector, will also decide that the compensation fixed for the sheriff includes his whole compensation both as sheriff and county collector.

The revenue act of 1845, like the present act, provided that the sheriff should be *ex officio* the collector of taxes.

In *Wood et al. v. Cook,* 31 Ill. 271, it was held that the act of 1845 merged the office and duties of collector into those of the sheriff.

We are of opinion that the demurrer was properly sustained to the pleas setting up that the compensation of Broadwell, as sheriff, had not been fixed by the board of county commissioners of Morgan county, and the judgment will be affirmed.

*Judgment affirmed.*