# OTTAWA *v.* CAREY.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Decided March 19th, 1883.

*Municipal Bonds—Municipal Corporations.*

1. Municipal corporations, being created only to aid the State government in the legislation and administration of local affairs, possess only such powers as are expressly granted, or as may be implied because essential to carry into effect those which are expressly granted.
2. Bonds issued by a municipal corporation, but not under either a general authority to borrow for corporate purposes, or a special legislative authority to borrow for purposes within the power of the legislature to confer, are void in the hands of a person who is not an innocent *bona fide* holder without notice.

3. A municipal corporation authorized by its charter "to borrow money on the credit of the city and to issue bonds therefor," and by special act to borrow a named sum "to be expended in developing the natural advantages of the city for manufacturing purposes," is not thereby authorized to issue bonds by way of donation to an individual to aid in developing the water power of the city, and is not liable to an action upon such bonds by one who takes them with notice of the facts.

Suit to recover upon bonds of the city of Ottawa, issued to develop the water power near the city, and given to the owners of the power.

Article IX., section 5, of the Constitution of 1848 of the State of Illinois, which was in force when the rights of the parties to the controversy were fixed, was as follows:

"The corporate authorities of counties, townships, school districts, cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes."

In 1853 the corporation of Ottawa was incorporated as a city with the following among other powers:

"ART. 5, SEC. 1. The city council shall have power and authority to levy and collect taxes upon all property, real and personal, within the limits of the city, not exceeding one-half of one per cent. per annum upon the assessed value thereof, and may enforce the payment of the same in any manner to be prescribed by ordinance not repugnant to the Constitution of the United States, and of this State.

"ART. 5. SEC. 3. The city council shall have power . . . to establish, support and regulate common schools, to divide the city into school districts, to borrow money on the credit of the city, and to issue bonds therefor, and pledge the revenue of the city for the payment thereof, provided, that no sum or sums of money shall be borrowed at a greater interest than at ten per cent. per annum.

"ART. 10. SEC. 20. No money shall be borrowed by the city council until the ordinance passed therefor shall be submitted to, and voted for, by a majority of the voters of said city, attending an election held for that purpose."

In 1851, one Cushman and his associates were empowered by

the legislature of Illinois to organize a corporation to be known as the Ottawa Manufacturing Company, to construct a dam across the Fox River for the purpose of creating a water power; and in 1865 this corporation, having been organized, was further empowered to construct a dam across the Illinois River, and to introduce the waters of that river into the Fox River above their dam on the latter.

In 1867 the legislature empowered the city to subscribe $100,000 to the stock of this company; but the subscription was never made. On the 15th day of June, 1869, the city of Ottawa adopted the-following ordinances:

"Sec. 1. Be it ordained by the city council of the city of Ottawa that the mayor of the city be and he is hereby authorized to borrow in the name of the city, at a rate of interest not exceeding ten per cent., the sum of $60,000, for the use of said city, to be expended in developing the natural advantages of the city for manufacturing purposes, and that bonds of the city be issued therefor in the sum of $500.00, with interest payable annually, said bonds to be payable one-third in five years, one-third in ten years, and one-third in fifteen years after the date thereof, provided that no application shall be made of the proceeds of said bonds except for the purpose aforesaid, and in pursuance of an ordinance to be passed for that purpose by the city council, nor until the faithful application of the proceeds of such bonds to the purpose aforesaid shall be fully secured to the city. Sec. 2. Be it ordained that a sufficient sum to pay the interest on said loan shall be annually provided by taxation, and set apart as a separate fund, and to be applied to the payment of the interest on said bonds, and for no other purpose. Sec. 3. This ordinance shall be submitted to the voters of the city to be voted for or against at an election to be held for that purpose on the 20th day of July, 1869. The manner of the determination shall be by depositing ballots upon which shall be written or printed 'For the loan ordinance' or 'Against the loan ordinance.'"

Under the ordinance of June 15th an election was had, at which a majority of the voters of Ottawa voted in favor of issuing the bonds, and on the 30th July, 1869, the corporation

framed a further ordinance, entitled " An Ordinance to carry into effect an ordinance of June 15th, 1869," by which the mayor was authorized to deliver the bonds to Cushman, to be used by him in " developing the natural resources and surroundings of the city."

The bonds were delivered to Cushman, under a contract which it is not necessary to recite. The municipality received no money, stock, or other equivalent for them. Cushman delivered them to the manufacturing corporation, and the manufacturing company sold them to one Eames, who knew of the proceedings of the common council in regard to the issue of the bonds, and that they were to be used as a gift, but had never heard their validity questioned. The city paid interest on them up to August 2d, 1871, but not thereafter. In November, 1879, Eames sold to Carey, the defendant in error, who knew all the foregoing facts.

Carey brought this suit in the court below to recover on the bonds held by him. The court gave judgment for the plaintiff, and the writ of error was sued out to reverse that judgment.

On the 30th of October, 1882, the judgment below was reversed, and Mr. Justice Harlan delivered the opinion of the court, in which, after reciting some of the foregoing facts, he said:

" The court below, by consent of parties, tried the case without the intervention of a jury, and found, among other facts : ' That the city made no subscription of stock in the Ottawa Manufacturing Company, but issued the bonds as a donation for the purposes indicated in the contract with Cushman, the latter being the sole consideration it received for the bonds ; that on the 11th day of March, 1871, Cushman delivered the bonds to the Ottawa Manufacturing Company, of which he was one of the corporators, and of which at the time he was a director, to be used by it for the purpose of making the improvement hereinbefore mentioned, without further consideration ; that the company at once entered upon the work of reconstructing the dams and races, and *partially* constructed the same under the powers granted to it . . . and completed said work, so that *some* water power was created, *but that said dam was carried away by a freshet in* 1872 or 1873,

*and has never been reconstructed;* that in June, 1871, the company sold and delivered the bonds in suit to Lester H. Eames, a citizen of Ottawa, for their full value, and part of the interest which had accrued after August, 1870 ; that, at the time Eames purchased the bonds he read their recitals, and had never heard their validity questioned, although the policy of issuing them, and the legal authority to do so, was the subject of discussion by the press and people of the city at about the time of their being issued ; that Eames had knowledge of the proceedings of the council in reference to the issue of the bonds, knew that they were issued for the purpose of being used as a donation to aid in the completion of the contemplated improvement, and knew of the contract between Cushman and the city with reference to the bonds.; and that in November, 1879, after the bonds had matured, Eames sold and delivered them to the defendant in error, a citizen of Missouri, for value, the latter knowing when he purchased substantially all that Eames knew touching the history of the bonds, and the purposes for which they had been applied.'

" We have seen that the general object which the city sought to accomplish was the development of its natural resources and advantages for manufacturing purposes. That end it proposed to obtain by the construction of dams and races in such manner as to bring into practical and permanent use, in the city and its immediate vicinity, all the available power of both the Illinois and Fox Rivers. Consequently, the ordinances passed by the city council, and Cushman's contract, alike required the construction of good, substantial, and sufficient dams and races. Now, it is impossible to resist the conclusion that as to the work done, and as to the manner in which it was performed, there was a substantial, if not an entire, failure upon the part of Cushman and those whom he employed to meet the terms of the agreement under which he, Cushman, received the bonds. The dams and races were, according to the facts found, only partially constructed. The work was completed only to the extent that *some* water power was created ; and the dam erected, so far from being ' good, substantial, and sufficient,' to secure the practical and permanent use of the water power, was carried away in 1872 or 1873, by a freshet, and has never been reconstructed. Under these circumstances, the city, as between it and Cushman, was entitled to demand a return of all the bonds, or their value, and to be saved harmless on account

of them. If Cushman still held them, and had himself sued the city, the defence of the latter would be complete. Is Carey, the present holder, in any better position, as against the city, than Cushman would be, had he sued? This question must receive a negative answer, because Carey and his immediate vendee, Eames, were well aware at the time of their respective purchases, as well of the terms of the ordinance, in pursuance of which the bonds were issued, as of the contract between the city and Cushman; and also because, as the special finding sufficiently indicates, the same facts were known to the Ottawa Manufacturing Company when it received the bonds from Cushman, one of its corporators and directors. Neither Carey nor Eames nor the company were *bona fide* holders, entitled to the benefit of the rule announced in *Hackett* v. *Ottawa*, 99 U. S. 86, and *Ottawa* v. *First Nat. Bk. of Portsmouth*, 105 U. S. 342. The work done was not of a character, as to extent, sufficiency or permanency, to entitle Cushman, had he sued, as against the city, to the payment of any of the bonds; and consequently, for the reasons given, the city is not liable to Carey.

" This conclusion renders it unnecessary to notice other questions raised by counsel, some of which relate to the authority of the city to issue the bonds under any circumstances, especially by way of donation.

" After this case had been under submission, our attention was called to a recent decision of the Supreme Court of Illinois, in *Wilson et al.* v. *Ottawa Manufacturing Company et al.* That case is relied upon—as authority for the proposition that the city had legal power to issue the bonds in question. In view of the ground upon which our conclusion in this case rests, it is needless to discuss that question in the different aspects in which it is presented."

On the 15th January, 1883, the judgment entered on the 30th day of the previous October was rescinded and annulled and a rehearing ordered.

On the 6th March, 1883, the case was resubmitted.

*Mr. C. B. Lawrence* for the city of Ottawa.—I. The legislature of Illinois could not, under the Constitution of the State, authorize a town or city to issue its bonds for any but corporate

purposes, and a donation of bonds to a private corporation, established for the purpose of creating a water power to be owned exclusively by such private corporation, was not an issue of bonds for a corporate purpose, and such bonds, in the hands of a purchaser with notice, are void. *Town of South Ottawa* v. *Perkins*, 94 U. S. 260; *People* v. *Depuyt*, 71 Ill. 651; *Pendleton County* v. *Amy*, 13 Wall. 297; *Kennicott* v. *Supervisors*, 16 Wall. 452; *St. Jo. Township* v. *Rogers*, 16 Wall. 654; *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Rogers* v. *Burlington*, 3 Wall. 654; *Supervisors* v. *Weider*, 64 Ill. 427; *Johnson* v. *County of Stark*, 24 Ill. 75; *Bissel* v. *City of Kankakee*, 64 Ill. 249; *English* v. *The People*, 96 Ill. 566; *Loan Association* v. *Topeka*, 20 Wall. 655; *Lowell* v. *Boston*, 111 Mass. 454; *People* v. *Batchellor*, 53 N. Y. 128; Jones on R. R. Securities, sec. 123, *et seq.*; *Ohio Valley Iron Works* v. *Moundsville*, 11 W. Va. 1; *Wilkesbarre City Hospital* v. *County of Luzerne*, 84 Pa. 55.—II. If these bonds had been issued for a corporate purpose, the bonds, in order to be valid, should have been issued by authority of the board of commissioners specially appointed by the legislature to take charge of this whole matter—to subscribe the stock, and to issue and sell at par the bonds of the city to raise the money for its payment. *Town of South Ottawa* v. *Perkins*, 94 U. S. 260; *Township of East Oakland* v. *Skinner*, 94 U. S. 255; *Middleport* v. *Ætna Life Ins. Co.*, 82 Ill. 562; *Supervisors* v. *People ex rel. R. R. Co.*, 25 Ill. 181; *Gaddis* v. *Richland Co.*, 92 Ill. 119; *Brush* v. *Ware*, 15 Pet. 93; *McClure* v. *Oxford*, 94 U. S. 429.—III. Even if the bonds had been issued for a corporate purpose, and if they had been issued by the proper authorities, viz., the board of commissioners, they would still be uncollectible by the present plaintiff (a purchaser with notice) because they were issued as a *donation* to a private manufacturing company, whereas the commissioners were authorized to issue them *only in payment of a corresponding amount of the stock of said company.*—IV. Even if the bonds had been issued for a corporate purpose, and if they had been issued by the proper authorities, namely, the board of commissioners, they would still be uncollectible by the present plaintiff, because he bought with notice that they were issued to Cush-

man in consideration of his contract to build " a good and substantial dam across the Illinois and Fox rivers sufficient to bring into use all the available water," and to protect the city on these bonds in case he did not create the water power, which contract he wholly failed to perform.—V. The statute authorized the commissioners to subscribe to the stock of the manufacturing company, and required them to " raise the money" for payment of the subscription, by issuing and selling bonds at not less than par. The mayor issued the bonds directly to Cushman for delivery to the manufacturing company. Even if the bonds were otherwise free from exception, this disposition of them was illegal. *Scipio* v. *Wright*, 101 U. S. 665; *Middleport* v. *Ætna Life Ins. Co.*, 82 Ill. 563.

*Mr. G. S. Eldredge* for defendant.—I. The city of Ottawa had undoubted corporate power to issue the bonds in question, in pursuance of its charter, and they were thus issued for legitimate corporate purposes. He cited *Maher* v. *Chicago*, 38 Ill. 266; *Taylor* v. *Thompson*, 42 Ill. 9; *Burr* v. *Carbondale*, 76 Ill. 455; *Briscoe* v. *Allison*, 43 Ill. 291; *Johnson* v. *Campbell*, 49 Ill. 316; *Misner* v. *Bullard*, 43 Ill. 470; *Chicago R. R. Co.* v. *Smith*, 62 Ill. 268; *People* v. *Depuy*, 71 Ill. 651; *People* v. *Trustees of Schools*, 78 Ill. 136; *Quincy R. R. Co.* v. *Morris*, 84 Ill. 410; *Hensley Township* v. *People*, 84 Ill. 544; *Pine Grove* v. *Talcott*, 19 Wall. 666; *Munn* v. *Illinois*, 94 U. S. 113; *People* v. *Kelly*, 76 N. Y. 475; *Weismer* v. *Douglas*, 64 N. Y. 91; *Livingston* v. *Darlington*, 101 U. S. 407; *Hackett* v. *Ottawa*, 99 U. S. 86.—II. The unconstitutionality of the act of February 19th, 1867, providing that commissioners appointed by the legislature in violation of the Constitution of Illinois of 1848 might subscribe for stock in the Ottawa Manufacturing Company on behalf of the city, and thus impose a debt *in invitum* upon the city. Cites *Harward* v. *St. Clair Drain Co.*, 51 Ill. 130; *Livingston* v. *Wider*, 53 Ill. 302; *People* v. *Chicago*, 51 Ill. 17; *People* v. *Salomon*, 51 Ill. 37; *Gage* v. *Graham*, 57 Ill. 144; *Hessler* v. *Drainage Co.*, 53 Ill. 105; *Marshall* v. *Silliman*, 61 Ill. 218; *Middleport* v. *Ins. Co.*, 82 Ill. 562; *Barnes* v. *Lacon*, 84 Ill. 461.—III. The city is

bound by its own construction of its charter power in this instance, and determination as a matter of fact, that the purpose for which the bonds were issued was a municipal purpose, as said by the Supreme Court of Illinois, " to promote the general prosperity and welfare of the municipality." *McClurkan* v. *Alleghany City,* 14 Penn. St. 82 ; *James* v. *Milwaukee,* 16 Wall. 159 ; *Van Hostrup* v. *Madison City,* 1 Wall. 291 ; *Meyer* v. *Muscatine,* 1 Wall. 384 ; *Society for Saving* v. *New London,* 29 Conn. 174 ; *Keithsbury* v. *Frick,* 34 Ill. 405 ; *Galena* v. *Corinth,* 48 Ill. 423 ; *Mayor* v. *Ray,* 19 Wall. 468 ; *Orleans* v. *Platt,* 99 U. S. 676 ; *Block* v. *Commissioners,* 99 U. S. 686. —IV. Eames was a *bona fide* purchaser of the bonds. He was not chargeable with constructive notice of anything but the charter power of the city to issue them ; not even gross negligence ; nothing short of positive fraud and an attempt on his part, in collusion with the officials of the city, to commit a fraud could impair his right as a *bona fide* holder ; gross negligence, even, alone, would not affect it. *Murray* v. *Lardner,* 2 Wall. 120–123 ; *Cromwell* v. *Sac Co.,* 96 U. S. 51, 57 to 60 ; *Swift* v. *Smith,* Legal News, Jan. 22d, 1881, 151 ; *National Bank* v. *Crow,* 60 N. Y. 85 ; *Seybel* v. *National Currency Co.,* 54 N. Y. 288 ; *Chapman* v. *Rose,* 56 N. Y. 137 ; *Welsh* v. *Sage,* 47 N. Y. 143 ; Byles on Bills, 115 ; *Comstock* v. *Hannah,* 76 Ill. 530–534 ; *Goodman* v. *Simmons,* 20 How. 343 ; *Murray* v. *Lardner,* 2 Wall. 110 ; *R. R. Co.* v. *Cowdry,* 11 Wall. 459.

Mr. Chief Justice Waite delivered the opinion of the court.

This is a suit to recover upon bonds issued by the city of Ottawa, Illinois, as a donation to aid in the improvement of the water power upon the Fox and Illinois rivers within the city, or in its immediate vicinity. Other bonds of the same issue were involved in *Hackett* v. *Ottawa,* 99 U. S. 86, and *Ottawa* v. *First National Bank of Portsmouth,* 105 U. S. 342, where it was held, in substance, that, as there was legislative authority to issue bonds for municipal purposes, and it was recited in the bonds then sued on that they were issued for such purposes, the city was estopped from proving, as against *bona fide* holders, that the recitals were untrue. Neither Hackett nor the bank

had any knowledge of the precise purposes for which the bonds were issued, and it was adjudged that they had the right to rely on what was recited.

The facts on which this case rests are, in brief, these :

The city of Ottawa was incorporated as a city in Illinois on the 10th of February, 1853, and given the ordinary powers of municipal corporations of that class for local government. It was specially authorized "to provide the city with water, to erect hydrants and pumps in the streets for the convenience of its inhabitants," and, upon a vote of the people, "to borrow money on the credit of the city, and to issue bonds therefor, and pledge the revenue of the city for the payment thereof." Our attention has not been called to any other provision of the charter as having a bearing on the questions to be considered.

In February, 1851, the Ottawa Manufacturing Company was incorporated by the general assembly of Illinois to build a dam across the Fox river for the purpose of creating a water power to be leased and used. On the 16th of February, 1865, the charter of this company was amended so as to authorize the building of a dam across the Illinois river, and a race to bring the water from that river into the pool of the dam across the Fox.

On the 19th of February, 1867, the general assembly passed an act purporting to constitute a board of commissioners to subscribe $100,000 to the capital stock of the manufacturing company for and on behalf of the city, and to pay the subscription by an issue of the bonds of the city. No subscription was ever made under this authority, and we understand the counsel for the defendant in error to concede that the act itself was unconstitutional.

On the 15th of June, 1869, an ordinance was passed by the city, submitting to the voters at an election, to be held on the 20th of the same month, the question whether the council should borrow $60,000 on the bonds of the city to be "expended in developing the natural advantages of the city for manufacuring" purposes. This election was held, and resulted in a vote by a majority of the legal voters in favor of the project. Thereupon, the city, on the 30th of July, 1869, passed

another ordinance, directing the mayor to issue the bonds and deliver them to William H. W. Cushman, " to be used by him in developing the natural resources and surroundings of the city," and authorizing and directing him " to expend the same in the improvement of the water power upon the Illinois and Fox rivers, within the city and in the immediate vicinity thereof, under the franchises and powers which have been granted for that purpose by the legislature of the State, or which may hereafter be granted for that purpose, in the manner which, in his judgment, shall best secure the practical and permanent use of said power to the city and its immediate vicinity."

Under this ordinance the bonds were issued and delivered to Cushman on the 2d of August, 1869, as a donation to aid the city in securing the contemplated water power, he agreeing in writing to cause the necessary works to be completed in the two rivers within a reasonable time, and if not, to return the bonds or a part thereof, according to the special provisions of the contract. No arrangements were made or contemplated for providing the city with water.

Cushman was one of the original corporators of the manufacturing company, and a director at the time the bonds were issued to him, and he, on the 11th of March, 1871, delivered them to the company "to be used by said company for the purpose of making the improvement hereinbefore mentioned, without further consideration." During the month of June, 1871, the company sold and delivered the bonds involved in this suit to Lester H. Eames, a citizen of Ottawa, for their face value and part of the interest which had accrued after August, 1870. When Eames made his purchase and paid for the bonds, he knew they had been issued as a donation to aid in the completion of the improvement contemplated in the contract with Cushman, and was cognizant of all the proceedings of the council in reference thereto. He also knew of the contract with Cushman. In November, 1879, after the bonds fell due, Eames sold them to William H. Carey, the plaintiff below, who paid value for them, with full knowledge of all that was known by Eames about their issue.

Upon these facts, found by the court and set forth in the record, judgment was rendered against the city and in favor of Carey for $72,814.76. To reverse that judgment this writ of error has been brought.

This case differs from those of Hackett and the First-National Bank of Portsmouth, *supra*, in that Carey cannot claim protection as a *bona fide* holder, while Hackett and the bank could. Neither Carey, nor Eames, nor the manufacturing company, nor Cushman, were purchasers without notice. Carey and Eames both paid value, but Carey bought after maturity, and it is expressly found that both he and Eames had actual knowledge of the purposes for which the bonds were issued, and of the contract with Cushman. Under the circumstances of this case, the manufacturing company is chargeable with knowledge of all the facts known to Cushman, one of its directors and the original contractor with the city. The questions then to be considered are such as may arise between the city and a purchaser for value from Cushman with full knowledge of all the facts affecting the validity of the bonds at their inception.

In Illinois, under the Constitution of the State, the corporate authorities of cities cannot be invested with power to levy and collect taxes except for corporate purposes. This has long been settled. *Weightman* v. *Clark*, 103 U. S. 256, and numerous Illinois cases there cited. What may be made a corporate purpose is not always easy to decide, but it has never been supposed that if legislative authority had not been granted to a municipal corporation to do a particular thing, that thing could be a purpose of that corporation.

Municipal corporations are created to aid the State government in the regulation and administration of local affairs. They have only such powers of government as are expressly granted them, or such as are necessary to carry into effect those that are granted. No powers can be implied except such as are essential to the objects and purposes of the corporation as created and established. 1 Dill. on Mun. Corp., § 89, 3d ed., and cases there cited. To the extent of their authority they can bind the people and the property subject to their regulation

and governmental control by what they do, but beyond their corporate powers their acts are of no effect.

It is not claimed that express authority was given the city of Ottawa to develop, or aid in developing, the natural advantages of its rivers for manufacturing purposes, and what we are now called on to decide is not whether, if such a power had been given, it would be within the general scope of the purposes of a city government, and thus a corporate purpose, within the meaning of that term as used in the Constitution, but whether it has been granted by the legislature. Much is said by the Supreme Court of Illinois in *Taylor* v. *Thompson*, 42 Ill. 9; *Chicago, Danville & Vincennes Railroad Co.* v. *Smith*, 62 Ill. 268; *The People* v. *Depuy*, 71 Ill. 651; *Burr* v. *City of Car-bondale*, 76 Ill. 455; *People* v. *Trustees of Schools*, 78 Ill. 136; *The Quincy, Missouri & Pacific Railroad Co.* v. *Morris*, 84 Ill. 410; *Hensley* v. *The People*, Ib. 544, and other cases of like character, as to what may be made a corporate purpose; but these were all cases in which the legislative department of the government had undertaken to grant a power, and the question was whether the power was one that could rightfully be made a purpose of a municipal corporation. No matter how much authority there may be in the legislature to grant a particular power, if the grant has not been made the city cannot act under it.

As power in a municipal corporation to borrow money and issue bonds therefor implies power to levy a tax for the payment of the obligation that is incurred, unless the contrary clearly appears, *Ralls County Court* v. *The United States*, 105 U. S. 733, it follows that the power contained in the charter to borrow money did not authorize the issue of the bonds in this case, unless they were issued for a corporate purpose, there being a constitutional prohibition against taxation by the city, except for corporate purposes. The question then is whether the city has been invested with power to raise money by public taxation to be donated to private persons or private corporations as a bonus for developing the water power in the city or its vicinity for manufacturing purposes.

The charter confers all the powers usually granted to a city

·for the purposes of local government, but that has never been supposed of itself to authorize taxes for everything which, in the opinion of the city authorities, would " promote the general prosperity and welfare of the municipality." Undoubtedly the development of the water power in the rivers that traverse the city would add to the commerce and wealth of the citizens, but certainly power to govern the city does not imply power to expend the public money to make the water in the rivers available for manufacturing purposes. It is because railroads are supposed to add to the general prosperity that municipalities are given power to aid in their construction by subscriptions to capital stock or donations to the corporations engaged in their construction; but in all the vast number of cases involving such subscriptions and donations that have come before this court for adjudication since *The Commissioners of Knox County* v. *Aspinwall,* decided twenty-five years ago, and reported in the 21st Howard, 539, it has never been supposed that the power to govern of itself implied power to make such subscriptions or such donations. On the contrary, it has been over and over again held, and as often as the question was presented, that unless the specific power was granted, all such subscriptions, and all such donations, as well as the corporate bonds issued for their payment, were absolutely void, even as against *bona fide* holders of the bonds. *Thomson* v. *Lee County,* 3 Wall. 327; *Marsh* v. *Fulton County,* 10 Wall. 676; *St. Joseph's Township* v. *Rogers,* 16 Wall. 644; *McClure* v. *Township of Oxford,* 94 U. S. 429; *Wells* v. *Supervisors,* 102 U. S. 625; *Allen* v. *Louisiana,* 103 U. S. 80.

In the present case there is nothing whatever to indicate any special authority in this city to pay a bonus for the work that was to be done. It did have power to provide the city with water, but there is nowhere anything looking to such a purpose in this transaction. The object here was to bring the water into use as power, to be leased or sold at reasonable rates. An attempt was made by the legislature to authorize a subscription to the stock of the manufacturing company, but that was of no avail, because in the form adopted the legislation was confessedly unconstitutional. The charter therefore stands the same

as though no such attempt had been made, and what was done did not create a corporate purpose to effect an improvement of the power. But even if there had been power to subscribe to the stock, it would not follow there was power to make a donation by way of a bonus to the company to aid in the improvement. In *Chicago, Danville and Vincennes R. R. Co.* v. *Smith, supra,* it was indeed said that the distinction between a donation to aid a company and a subscription to its stock "was more apparent than real," but that was said in reference to the question of making subscriptions and donations for corporate purposes, and not with reference to the effect of a power to subscribe as conferring a power to donate. In no case to which our attention has been called has it been held that a power to subscribe for stock would of itself authorize a donation.

The case of *Hickling* v. *Wilson,* decided by the Supreme Court of Illinois in June of last year, and reported in 104 Ill. 54, is relied upon in support of this judgment. That was a suit by a creditor of the manufacturing company against the stockholders to collect his debt. The city was not a party, and its liability was in no way involved. In the opinion, as published in the official report of the case, it was not even assumed that there was corporate power to issue the bonds.

The present case was submitted at the last term, and at a former day in this term a decision was announced reversing the judgment, but in the opinion reasons were assigned for the reversal different from those now given. That judgment was afterwards, upon application for a rehearing, set aside and a reargument ordered. Upon further consideration of the whole case, we prefer to rest the decision on the ground that as between Cushman and the city the bonds in question were illegal and void, and as the present holder occupies no better position than Cushman, he and all those under whom he claims having bought with full knowledge of all the facts, the judgment should have been in favor of the city.

*The judgment of the circuit court is reversed, and the cause remanded, with instructions to enter judgment in favor of the city on the facts found.*