## HILL v. MEMPHIS.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF MISSOURI.

No. 68.   Argued November 6, 1889. — Decided March 10, 1890.

A power conferred by statute on a municipal corporation to subscribe for stock in a railway corporation does not include the power to create a debt, and to issue negotiable bonds representing it, in order to pay for that subscription: and this doctrine prevails in Missouri.

All grants of power to a municipal corporation to subscribe for stock in railways are to be construed strictly and not to be extended beyond the term of the statute.

The provisions in the general railroad law of Missouri, which went into effect June 1, 1866, respecting the loan of municipal credit to a railroad company, and of the act of the State of March 24, 1868, respecting the funding of the debts of municipalities, are to be construed in subordination to the provision of the constitution of the State then in force, prohibiting the legislature from authorizing any town to loan its credit to any corporation, except with the assent of two-thirds of the qualified voters, at a regular or special election.

This was an action against the City of Memphis, a municipal corporation of Missouri, alleged to have been known and designated on the first day of March, 1871, as the town of Memphis, and styled the Inhabitants of the Town of Memphis. It was brought to recover the amount of one hundred and thirty-eight coupons, each for eighty dollars, detached from certain railroad bonds purporting to have been issued by that town. These bonds, except in their number, were in the following form:

"Number 4.     UNITED STATES OF AMERICA.     Dollars 1000.

"Eight per cent railroad bond.. Town of Memphis, county of Scotland.   Twenty years.

"Know all men by these presents · that the town of Memphis, in the county of Scotland, in the State of Missouri, acknowledges itself indebted to the Missouri, Iowa and Nebraska Railway Company, a corporation existing under and by virtue of the laws of the States of Missouri and Iowa, formed by a consolidation of the Alexandria and Nebraska City Railroad Company (formerly Alexandria and Bloomfield Railroad Company); of the State of Missouri, and the Iowa Southern Railway Company, of the State of Iowa, in the sum of one thousand dollars, which sum the said town hereby promises to pay to the said Missouri, Iowa and Nebraska Railway Company, or bearer, at the Farmers' Loan and Trust Company in New York, on the first day of March, A.D. 1891, with interest thereon from the first day of March, 1871, at the rate of eight per cent per annum, which interest shall be payable annually, in the city of New York, on the first day of March in each year, as the same shall become due, on the presentation of the coupons hereto annexed.   This bond being issued under and pursuant to an order of the board of trustees of the town of Memphis, for subscription to the stock of the Missouri, Iowa and Nebraska Railway Company, as authorized by an act of the general assembly of the State of Missouri, entitled 'An act to incorporate the Alexandria and Bloomfield Railroad Company, approved February 9, 1857.'   In testimony whereof the said town of Memphis has executed this bond by the chairman of the board of trustees, signing his name thereto, and the clerk of said board of trustees under the order thereof attesting the same and affixing thereto the seal of said board. Thus done at the town of Memphis, in the county of Scotland, in the State of Missouri, this first day of March, A.D. 1871.

"[Seal. Town of Memphis, Scotland County, Missouri.]

"H. H. BYRNE,

" *Chairman of the Board of Trustees of the Town of Memphis.*

"Attest: WILLIAM L. KAYS, *Clerk.*"

The coupons, excepting in their number and dates, were in the following form:

> "*Railroad Bond Coupon.* 80.
>
> "MEMPHIS, Mo., *March* 1, 1871.
>
> "The town of Memphis, State of Missouri, will pay to the bearer on March 1, 1885, at the Farmers' Loan & Trust Company, in New York, eighty dollars, being *one year's interest* on Bond No. 4, for $1000.
>
> "H. H. BYRNE, *Chairman.*"

The bond, on its face, purported to have been issued on the 1st day of March, 1871, by order of the board of trustees of the town of Memphis, for subscription to the stock of the Missouri, Iowa and Nebraska Railway Company, as authorized by an act of the general assembly of the State of Missouri, entitled "An act to incorporate the Alexandria and Bloomfield Railroad Company," approved February 9, 1857. That act provided that the company should in all things be subject to the same restrictions, and be entitled to all the privileges, rights and immunities which were granted to the North Missouri Railroad Company by its act of incorporation, so far as the same were applicable, as fully and completely as if they were thereby reënacted. The fourteenth section of this latter act was as follows:

"SEC. 14. It shall be lawful for the county court of any county, in which any part of the route of the said railroad may be, to subscribe to the stock of said company, and it may invest its funds in the stock of said company, and issue the bonds of such county to raise funds to pay the stock thus subscribed, and to take proper measures to protect the interest and credit of the county. Such county court may appoint an agent to represent the county, vote for it, and receive its dividends; and (any) incorporated city, town, or incorporated company may subscribe to the stock to said railroad company, and appoint an agent to represent its interests, give its vote, and receive its demands (dividends), and may take proper steps

to guard and protect the interests in (of) such city, town, or corporation."

The plaintiff also relied as authority for issuing the bonds, though not recited in them, upon section 17 of the General Railroad Law of Missouri, which went into effect August 1, 1866. That section is as follows: "Sec. 17. It shall be lawful for the county court of any county, the city council of any city, or the trustees of any incorporated town, to take stock for such county, city, or town in, or loan the credit thereof to, any railroad duly organized under this or any other law of the State *provided* that two-thirds of the qualified voters of such county, city, or town, at a regular or special election to be held therein, shall assent to such subscription." Gen. Stat. Missouri (1866), 338. He also relied upon the act of March 24, 1868, entitled "An act to enable counties, cities and incorporated towns to fund their respective debts," which is as follows:

"*Be it enacted by the General Assembly of the State of Missouri, as follows:* Section 1. That the various counties of this State be, and they are hereby, authorized to fund any and all debts they may owe; and for that purpose may issue bonds bearing interest at not more than ten per centum per annum, payable semi-annually, with interest coupons attached; and all counties, cities or towns in this State which have or shall hereafter subscribe for the capital stock of any railroad company may, in payment of such subscriptions, issue bonds bearing interest at not more than ten per centum per annum, payable semi-annually, with interest coupons attached. The bonds authorized by this act shall be payable not more than twenty years from date thereof.

"This act to take effect from and after its passage.

"Approved March 24, 1868." Laws of 1868, 46.

Article 11 of the constitution of Missouri, which went into effect in 1865, declares that "the general assembly shall not authorize any county, city or town to become a stockholder in, or to loan its credit to, any company, association or corpo-

ration, unless two-thirds of the qualified voters of such county, city or town, at a regular or special election to be held therefor, shall assent thereto."

The town of Memphis was incorporated by act of the legislature of Missouri, November 4, 1857, but that act was repealed on the 31st of December, 1859. An attempt was made to show that the people of the same area of country, in the following year, organized themselves into a municipality under the general law of the State, by the name of " The inhabitants of the town of Memphis," and so continued until 1880; that by its trustees an election was ordered to determine whether it should subscribe $30,000 to the stock of the railroad in question; that such election was accordingly had; that the subscription was voted by a two-thirds vote; and that in pursuance of it the stock was subscribed and bonds of the town were issued. The evidence on these points was very unsatisfactory, but in the view taken of the want of power in the town to issue the bonds, it becomes immaterial. The court instructed the jury that on the face of the record produced before them they must find for the defendant, as no authority was shown, on the part either of the town or city of Memphis, to issue the bonds in question. The jury accordingly found for the defendant, upon which judgment was entered, to review which the case was brought here on writ of error. 23 Fed. Rep. 872.

*Mr. John H. Overall* and *Mr. F. T. Hughes* for plaintiff in error.

*Mr. Henry A. Cunningham* for defendant in error.

Mr. Justice Field, after stating the case, delivered the opinion of the court.

The act of the legislature of Missouri of February 9, 1857, to incorporate the Alexandria and Bloomfield Railroad Company, gives no authority to any town of the State to issue bonds for stock subscribed by it. The fourteenth section, which is the one upon which the plaintiff relies, empowers the county court of a county in which any part of the route of a

railroad may lie to subscribe to stock of the company, to invest its funds in that stock, to issue the bonds of the county to raise the funds to pay for the stock thus subscribed, to take proper steps to protect the interest and credit of the county and to appoint an agent to represent the county and receive its dividends. The same section also empowers any incorporated city or town to subscribe for stock of such railroad and to appoint an agent to represent its interest, give its votes and receive its dividends, and take proper steps to guard and protect its interest. But it does not authorize the town to issue any bonds for the stock thus subscribed. It leaves the town to provide for the payment of the stock in the ordinary way in which debts contracted by a town are met, that is, by funds arising from taxation. It is well settled that the power to subscribe for stock does not of itself include the power to issue bonds of a town in payment of it. All grants of power in such cases to subscribe for stock in railways are to be construed strictly and not to be extended beyond the terms of the law. Whilst a municipal corporation, authorized to subscribe for the stock of a railroad company or to incur any other obligation, may give written evidence of such subscription or obligation, it is not thereby empowered to issue negotiable paper for the amount of indebtedness incurred by the subscription or obligation. Such paper in the hands of innocent parties for value cannot be enforced without reference to any defence on the part of the corporation, whether existing at the time or arising subsequently. Municipal corporations are established for purposes of local government, and in the absence of specific delegation of power cannot engage in any undertakings not directed immediately to the accomplishment of those purposes. Private corporations created for private purposes may contract debts in connection with their business, and issue evidences of them in such form as may best suit their convenience. The inability of municipal corporations to issue negotiable paper for their indebtedness, however incurred, unless authority for that purpose is expressly given or necessarily implied for the execution of other express powers, has been affirmed in repeated decisions of this court.

In *Police Jury* v. *Britton*, 15 Wall. 566, 571, 572, it was held that the trustees or representative officers of a parish, county, or other local jurisidiction in Louisiana, invested with the usual powers of administration in specific matters, and the power of levying taxes to defray the necessary expenditures of the jurisdiction, had no implied authority to issue negotiable securities for the purpose of raising money or funding a previous debt. Whilst the court did not insist that express authority is in all cases required for municipal bodies to issue negotiable paper, as such power may be implied from other express powers, it held that such implications should not be encouraged or extended beyond the fair inferences to be gathered from the circumstances of each case. "It is one thing," said the court, "for county or parish trustees to have the power to incur obligations for work actually done in behalf of the county or parish, and to give proper vouchers therefor, and a totally different thing to have the power of issuing unimpeachable paper obligations which may be multiplied to an indefinite extent. If it be once conceded that the trustees or other local representatives of townships, counties and parishes have the implied power to issue coupon bonds, payable at a future day, which may be valid and binding obligations in the hands of innocent purchasers, there will be no end to the frauds that will be perpetrated."

In *Mayor* v. *Ray*, 19 Wall. 468, 475, the power of municipal bodies to issue negotiable paper for debts contracted by it was largely considered, and from the nature and the purposes of such municipalities it was held that they could not make such paper in the absence of express authorization. After speaking of municipal corporations as subordinate branches of the domestic government of a State, instituted for public purposes only, having none of the peculiar qualities or characteristics of trading corporations created for purposes of private gain, except that of acting in a corporate capacity, the court said: "Their powers are prescribed by their charters, nd those charters provide the means for exercising the powers; and the creation of specific means excludes others. Indebtedness may be incurred to a limited extent in carrying

out the objects of the incorporation. Evidences of such indebtedness may be given to the public creditors. But they must look to and rely on the legitimate mode of raising the funds for its payment. That mode is taxation." And again, p. 477: "If in the exercise of their important trusts the power to borrow money and to issue bonds or other commercial securities is needed, the legislature can easily confer it under the proper limitations and restraints, and with proper provisions for future repayment. Without such authority it cannot be legally exercised."

In Claiborne County v. Brooks, 111 U. S. 400, 406, this doctrine is reiterated and reaffirmed with emphasis. Said the court : " Our opinion is, that mere political bodies, constituted as counties are, for the purpose of local policy and administration, and having the power of levying taxes to defray all public charges created, whether they are or are not formally invested with corporate capacity, have no power or authority to make and utter commercial paper of any kind, unless such power is expressly conferred upon them by law, or clearly implied from some other power expressly given, which cannot be fairly exercised without it." See also Kelley v. Milan, 127 U. S. 139; Young v. Clarendon Township, 132 U. S. 340, 347.

The same doctrine prevails in Missouri. It follows that there was no authority in the town of Memphis to issue the bonds from which the coupons in suit are detached, under the law referred to in the bonds as authorizing them.

Nor can any authority for the issue of the bonds be derived from section 17 of the General Railroad Law of the State, which went into effect June 1, 1866. Though that section in terms empowers the trustees of an incorporated town to loan its credit to any railroad company organized under a law of the State, and the issue of its bonds to such company may be considered as a loan of its credit, it must be construed in subordination to the constitution of the State which took effect the previous year, and prohibits the legislature from authorizing any town to loan its credit to any corporation unless two-thirds of the qualified voters of the town, at a regular or special election, shall assent thereto. No assent was ever

given by the voters of the town of Memphis to the issue in 1871 of its bonds to the Missouri, Iowa and Nebraska Railway Company, but only to its subscription to stock in that company; and no subsequent loan of credit by the issue of bonds to the company could be authorized by the legislature except under the restrictions of the constitution.

The same answer may be made to the claim of authority under the act of the State of March 24, 1868, enabling counties, cities and towns to fund their debts. The constitution of the State controls its construction and prevents the issue of any bonds by a town of the State without the previous assent of two-thirds of its voters expressed at an election, general or special, called for that purpose.

*Judgment affirmed.*