**COCHRAN et al. v. CITY OF NOME et al.**
No. 3606.

District Court of Alaska. Second Division. Nome.
Aug. 7, 1944.

426

428

Ira D. Orton, of Seattle, Wash., for plaintiffs.
C. C. Tanner, of Nome, Alaska, for defendants.

MORISON, District Judge.

The first and second queries propounded are very natural and proper ones, and as they relate to the same matter they may be disposed of together. They are as follows: "In exercising their discretion must the plaintiffs and the 'then Mayor of Nome' be unanimous in so doing; if not do the plaintiffs have one vote each and the 'then Mayor of Nome' only one vote, in case of disagreement?" ....

In answer to these queries the Court finds that the devisor himself in his will constitutes and calls the executors of his will and the Mayor of Nome a "board," and commits

to this board the authority to determine for what purpose or purposes this fund shall be "used in the promotion of the health or other welfare of the city of Nome."

■■ And in reference thereto the Court is of the opinion that when the term "board" is thus used without comment or explanation it must be interpreted in its common and ordinary meaning and use, and therefore to mean simply an agency, a number of persons organized to perform a trust or to execute an official representative function; or it is simply a number of persons who have the management of some public or private business; and the general rule is that when a council or collective body consisting of a given number of persons is authorized by statute or by appointment to act upon a matter, or to execute a business or trust, authority is thereby given to that body to act upon the matter committed to it, whenever a majority of the members of such board or body are lawfully present. 8 C.J. pp. 1130, 1131; 11 C.J.S., Board, p. 369; State v. Porter, 113 Ind. 79, 82, 14 N.E. 883; 43 C.J. §§ 774–776.

■ And the Court is of the further opinion that the handling of the fund thus inherited is a quasi municipal act; and as to all matters respecting municipal corporations, in the absence of charter or statutory provisions to the contrary, the rule seems well established that a majority of a quorum is all that is required for the adoption or passage of any ordinance or resolution properly arising for the action of a municipal body; and the Court is therefore of the opinion that a majority of the members of the "board" created by the will is all that is necessary to determine for what particular object or purposes this fund in question may be applied; and that necessarily means that each member of said "board" named in the will is entitled to one vote; and that a majority of the members of this board may determine for what purpose or purposes this inheritance may be used. 8 C.J. 1130, 1131; 11 C.J.S., Board, p. 369; 43 C.J. 502; Broadwell v. People, 76 Ill. 554, 557; Wirt v. McEnery, C.C., 21 F. 233, 235.

■ The third, fourth and fifth queries are as follows: "Should the fund be distributed by the probate court to the city of Nome:" "Is the city of Nome and its officers entitled to have the custody of the fund?" "Does the city of Nome and its common council have the right to use and disburse said fund?"

To all of these queries the answer of the Court is in the negative. The city of Nome is the beneficiary of the deceased's estate, after the payment of certain legacies; but it is not entitled to have the estate or the proceeds of the estate turned over to it by the executors. Under the command of the will the executors must first reduce this estate to money and then to expend that money "in the promotion of the health or welfare of the city of Nome, at the discretion of the Board consisting of the executors of the will and the Mayor of Nome."

This provision is clearly expressed. It is the command of the devisor; it is well within his power to make, and so far as the record shows there is no controversy among the members of the "board" created for the purpose of determining to what use this fund will be applied; hence this Court has no power to interfere in advance, if indeed at any time, of any action of such "board" and also the action of the probate court thereon.

■ The sixth query propounded to the Court is as follows: "Must the city of Nome and its common council obey the orders and directions of the plaintiffs and the 'then Mayor' of Nome?"

As this Court views this matter, it is the duty of the executors of this will and the Mayor of Nome, consulting and acting together as the "Board" created by the will, to decide upon some beneficial use or uses to the city of Nome to which they can apply this fund; and in making such decision they should be of liberal mind. They should consult not only each other but also all the members of the common council and other citizens of the city who are interested in its welfare, to the end that they may not only perform their

duty but also that they may confer a real and lasting benefit to their city. However, when this "board" acts in pursuance of the directions of this will, the city can accept this bequest or reject it; and should the city refuse to accept the benefits of the bequest, this property would likely escheat to the Territory.

The seventh query propounded to the Court is as follows: "Is the power given to the plaintiffs and the 'then Mayor of Nome' in relation to said bequest, a power of 'supervision' or only a power of 'visitation' as such terms are legally defined?"

Answering this query, the Court is of the opinion that when the executors of this will have reduced all the property of the deceased which came into their hands to money and have expended or otherwise handled this estate for the purpose or purposes which in the opinion of the "board", consisting of themselves and the Mayor of the city of Nome, tends best to "promote" the health or some other welfare "of the city of Nome", and have made due settlement of their trust in the Probate Court as they are required by law to do, their mission and official power is ended, and they have neither any power of "visitation" or "supervision" other than that of any other citizen. Furthermore, in the United States generally the legislatures are the visitors of all corporations founded by them for public purposes. Trustees of Dartmouth College v. Woodward, 4 Wheat. 518, 4 L.Ed. 629; Guthrie v. Harkness, 199 U.S. 148, 157, 26 S.Ct. 4, 50 L.Ed. 130, 4 Ann.Cas. 433.

The eighth query is as follows: "Give a number of examples of purposes for which said legacy may properly be used as coming within the meaning of the uses 'in promotion of the health or other welfare of the city of Nome' ".

(1) In answer to this query this Court is of the opinion that over and above all other things desirable and indeed vitally essential to the welfare and happiness of the city is some definite action toward the check and final elimination

of the ravages of tuberculosis. This terrible and unnecessary disease as we all know already hangs like a pall over our city; and with this fund as a nucleus no doubt the Territory and the National Government would, to a greater or less extent, assume the burden of the undertaking and thus sooner or later bring health and happiness to otherwise doomed citizens.

(2) If the city is not interested in the suppression of this disease, then I suggest the establishment in the schools of the city industrial departments—workshops for the boys and home arts for the girls, in order that they may be taught how to handle tools and implements in the building and furnishing of their homes in the future.

(3) If neither of these suggestions is desirable, then they might consider the construction of substantial street crossings at the junctions of the various streets of the city and the general improvement of sidewalks on all streets.

The ninth query is as follows: "Should said legacy be used for only one proper and legal purpose or may it be used for several?"

In answer to this query the Court is of the opinion that it all depends upon the nature of the purpose or purposes in view. However, speaking generally, the Court is of the opinion that one real benefit is preferable to a number of questionable ones, and that such is probably all that can be expected.

The tenth query is as follows: "Does the city of Nome have authority to conduct the Nome Drugstore?"

In answer to this query the Court is of the opinion that such an undertaking would be totally ultra vires and completely foreign to the statutory powers creating and controlling municipal corporations.

The Compiled Laws of Alaska, section 2383, sets out the several powers granted by the Legislature to municipal corporations, and nowhere therein is such an institution as a drugstore provided for. Furthermore, municipal corpora-

tions are strictly creatures of statute and they have no powers whatever except what are specifically granted to them by the Legislature or are necessarily implied. Indeed we may safely say that "Municipal corporations are created to aid the state government in the regulation and administration of local affairs. They have only such powers of government as are expressly granted to them, or such as are necessary to carry into effect those that are granted. No powers can be implied, except such as are essential to the objects and purposes of the corporation as created and established. * * * No matter how much authority there may be in the Legislature to grant a particular power, if the grant has not been made the city cannot act under it." Town of Valdez v. Valdez Dock Co., 5 Alaska 399, 403; Barnett v. Denison, 145 U.S. 135, 12 S.Ct. 819, 36 L.Ed. 652; Hill v. Memphis, 134 U.S. 198, 10 S.Ct. 562, 33 L. Ed. 887.

As above stated, incorporated towns in Alaska have only certain powers of government; and any doubt as to the existence of a power must be resolved against it. Id.

Indeed, "municipal corporations possess and exercise the following powers and none other:

First, those granted in express words;

Second, those necessarily and fairly implied in or are incidental to the declared objects and purposes of the corporation, not simply convenient but indispensable. 1 Dill. Mun. Corp. § 89; Barnett v. Denison, 145 U.S. 135, 12 S. Ct. 819, 36 L.Ed. 652; City of Ottawa v. Carey, 108 U.S. 110, 2 S.Ct. 361, 27 L.Ed. 669.

"And a strict rather than liberal construction of the powers of a municipal corporation is adopted; and such only can be implied as are essential to the corporate objects and purposes. City of Ottawa v. Carey, 108 U.S. 110, 2 S.Ct. 361, 27 L.Ed. 669; Powers of Municipal Corporations, Compiled Laws of Alaska, § 2383.

Under the laws of Oregon which are authoritative in Alaska we find that "The city * * * can exercise no

powers except such as are conferred in its charter, and such powers should be strictly construed." City of Portland v. Schmidt, 13 Or. 17, 6 P. 221.

The eleventh query is as follows: "Is it necessary that said Drugstore be sold by the executors before distribution?"

■ In answer to this query the Court is of the opinion that an executor or administrator is not justified in leaving assets in trade for the law declares it to be hazardous use to permit of trust money, as trading lies outside the scope of administrative functions; and this is true even though the property is of such character that it can be used to better advantage that way.

■ Indeed so great a breach of trust is it for the representative to engage in business with the funds of the estate that the law charges him with all losses thereby incurred without on the other hand allowing him to receive the benefit of any profits which he may make; however, good discretion may require some latitude in closing out decedent's business, and this a probate court will duly consider when passing upon the representative's accounts. 24 C.J. 57; 33 C.J.S., Executors and Administrators, § 194; In re Freud's Estate, 131 Cal. 667, 63 P. 1080, 82 Am.St. Rep. 407; In re Ennis' Estate, 96 Wash. 352, 165 P. 119.

■ Furthermore, it is said that municipal corporations have the capacity and power to take and hold real and personal property, by devise, bequest, or deed of gift in trust for the purposes of a public nature, including uses germane to the objects of the corporation, although the object may be one which the municipality could not carry out at public expense. Thus it may take property in trust for the erection and maintenance of a courthouse, city or town hall, or other public buildings; for a soldiers' monument; for repairing highways and bridges; for laying out and improving and lighting streets; for planting and renewing shade trees; for use in connection with waterworks; for

public parks; for the erection and maintenance of colleges and schools or other educational purposes, including the maintenance of a public library or reading room. 43 C.J. § 2096.

At least there is no doubt from all authorities that the city may take, hold and receive the benefit of the property in question; and this Court is of the opinion that no law impels a hurried disposal of same which would undoubtedly result in loss, when a sensible and normal disposition of the stock in hand in the usual way will not only immeasurably benefit the people throughout this Second Division but will also result in profit to the city as there is probably no other drugstore within five hundred miles of Nome. And this Court is of the further opinion that by proper proceeding in the Territorial Legislature, if the city desires to experiment in what we are accustomed to call "socialistic practices," obtain full authority to own and operate the store in question indefinitely. Whether this is desirable or otherwise is a question for the people of Nome and the wisdom of the members of the Legislature.

Counsel may prepare and submit findings of fact, conclusions of law and decree in accordance herewith.