**PULTE v. KEEL, Mayor, et al.  (No. 11821.)\***

Court of Civil Appeals of Texas.  Fort Worth.
May 7, 1927.

Rehearing Denied June 11, 1927.

1. **Injunction** ⊜164—**District judge may during vacation appear and determine motion to dissolve temporary injunction (Rev. St. 1925, art. 4662).**

While district judge may not in chambers or in vacation dismiss a bill, he may nevertheless in vacation appear and determine motion to dissolve temporary injunction that has been issued, in view of Rev. St. 1925, art. 4662.

2. **Municipal corporations** ⊜896—**"Warrant" is written declaration evidencing existing debt and may be made payable out of current funds.**

Generally "warrant," when used to describe county or city obligation as contradistinguished from bond, is written declaration of city or municipality evidencing existing debt, which may be registered and made payable as provided by law out of current funds (citing Words and Phrases, Second Series, "Township Warrant").

3. **Municipal corporations** ⊜918(1)—**Obligations of city held "bonds" requiring approval by election, though designated as interest-bearing time warrants (Gainesville City Charter, art. 4, §§ 1–3).**

Obligation of city for construction of incinerating plant, made payable to bearer and containing essential features of promissory notes or bonds, *held* to come within Gainesville City Charter, art. 4, §§ 1–3, requiring election for issuance of bonds in excess of $2,500, and could not be lawfully issued in sum of $16,000 without election, though designated as interest-bearing time warrants of city.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Bond.]

4. **Municipal corporations** ⊜906—**Statutes prohibiting unauthorized indebtedness cannot be avoided by designating bonded obligation as "warrant" (Gainesville City Charter, art. 2, §§ 3, 28, art. 4, §§ 1–3).**

Gainesville City Charter, art. 4, §§ 1–3, art. 2, §§ 3, 28, and other constitutional and statutory provisions safeguarding interests of property owning citizens of municipality against unauthorized or excessive indebtedness, cannot be avoided by arbitrary designation of obligation, properly coming within meaning of bonded obligation,· as "warrant."

5. **Municipal corporations** ⊜906—**City has no implied power to issue negotiable paper.**

No implied power to issue negotiable paper exists in a city.

6. **Municipal corporations** ⊜918(1) — **City's power to establish incinerator did not authorize issuance of long-time obligations without election (Gainesville City Charter, art. 2, §§ 3, 28, art. 4, §§ 1–3).**

General power of city of Gainesville to establish an incinerating plant for disposition of sewerage under City Charter, art. 4, §§ 1–3, art. 2, §§ 3, 28, cannot be lawfully extended by implication so as to authorize issuance of long-time obligations in payment therefor, and in absence of election authorizing issuance of such obligations, their issuance was void.

Appeal from District Court, Cooke County; W. S. Moore, Judge.

Petition by A. F. Pulte to enjoin J. Z. Keel, mayor of the city of Gainesville, and others, from constructing an incinerating plant and issuing the city's obligations in payment therefor. From an order dissolving temporary injunction theretofore issued, plaintiff appeals. Reversed, and temporary injunction reinstated.

Culp, Culp & Culp, of Gainesville, for appellant.

Cecil Murphy and W. L. Blanton, both of Gainesville, for appellees.

CONNER, C. J.  [1] This appeal is from an order dissolving a temporary writ of injunction theretofore issued restraining the city of Gainesville and others from the construction of an incinerating plant adjoining the property of appellant, upon which he was living, and also restraining the city of Gainesville from the issuance and delivery of specified obligations in payment for the work.  The order of dissolution was made in vacation, and it is insisted that the court was without power to do this.  While a district judge may not in chambers or in vacation dismiss a bill (Grant v. Chambers, 34 Tex. 573; Coleman v. Goyne, 37 Tex. 552; Price v. Bland, 44 Tex. 145), he may nevertheless in vacation hear and determine a motion to dissolve a temporary injunction that had been issued. Article 4662, Rev. St. 1925.  One of the grounds upon which the prayer had been based was that the construction of the incinerator under the circumstances specified would constitute a nuisance.  But defendants' verified answer to the petition specifically denied those allegations, and upon the submission of the case before it was admitted that the order of dissolution could not be set aside on this ground; it being conceded to be within the judicial discretion of the judge to dissolve the injunction in so far as it was based upon the allegations constituting ·the nuisance.  We shall, therefore, not further notice the foregoing phases of the case.

The petition for the writ, however, as a further ground of relief, alleges, in substance, that the plaintiff is a resident, taxpaying property owner in the city of Gainesville, and that the mayor, Hon. J. Z. Keel, and the commissioners (with the exception of Hon. W. O. Davis, who declined to join, on the ground that the action was unauthorized) had entered into a contract with others named and made parties to the action for the construction of a specified incinerator, and in payment

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error refused November 2, 1927.

therefor the city had issued or was about to issue its obligation in the total sum of $16,-000, extending over a series of years and drawing 6 per cent. interest. According to allegations of appellant's petition, the obligations as authorized by the city ordinance were made payable to the "bearer," and were designated as "interest-bearing time warrants of the city of Gainesville, to be denominated city of Gainesville, Tex., Incinerator Warrants, Series 1926." The warrants were numbered from 1 to 16, inclusive, each payable in the sum of $1,000, No. 1 maturing March 1, 1928, and thereafter one on the same day of each succeeding year until March 1, 1943, when the last matured. Each warrant was made to "bear interest at the rate of 6 per cent. per annum, payable March 1, 1927, and semiannually thereafter on March 1 and September 1 of each year, which shall be evidenced by coupons attached to said warrants." The warrants further provide that:

"In the event the sum of money evidenced by this warrant and the annexed coupon shall not be paid at maturity, the same shall thereafter bear interest at the rate of 6 per cent. per annum until fully paid, and in the event of such default and it becomes necessary for the holder of this warrant or of any coupon attached hereto to place the same in the hands of an attorney for collection or to institute suit, etc., the city of Gainesville obligates itself and promises to pay to the holder hereof an additional ten (10%) per cent. attorneys' fees."

Ordinances were passed providing for the levy and collection of an interest and sinking fund with which to pay the warrants as provided by law, but it is admitted that no election had been ordered or held authorizing the creation of the debt evidenced by the warrants, and the vital question necessary for our determination is thus presented under appellant's second assignment of error, to wit:

"The action of the city council of the city of Gainesville, Tex., in issuing said city warrants in the total sum of sixteen thousand dollars ($16,000) and extending over a series of years and drawing six (6%) interest, and binding the revenue of said city for future years to pay the same, and for the purchase and construction of a crematory, was in violation of sections 1, 2, and 3 of article IV of the city charter of said city as well as section 28, art. II, of said charter, and void."

The charter of the city of Gainesville, in so far as necessary to notice, provides:

"Art. 4, § 1: The city council of the city of Gainesville shall have power and authority by ordinance duly passed if it so elects to borrow money on the credit of the city for permanent improvements, for public buildings, for the permanent improvements of its streets, avenues, alleys, public grounds, building of sidewalks, macadamizing, remacadamizing, paving, and repaving of streets, alleys, avenues and public grounds and for the purpose of providing the city with funds of the ownership of public utilities, including water, light, sewer and gas

works; and the council may issue bonds for the city of Gainesville for all or any of the above purposes to any amount not exceeding $150,-000 in any one year, provided, that in addition, the said city is expressly authorized to issue bonds for the purpose of refunding the bonds of the city previously issued; provided, that the bonds be refunded at the same or lower rate of interest than the bonds proposed to be retired draw. It is further provided that debt shall never be created by the city of Gainesville unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent. thereon.

"No bonds shall be issued for any purpose except for the purpose above named, which shall not exceed $150,000 for any one year and for the purpose and refunding bonds previously issued.

"No bonds shall be issued for any purpose in excess of $2,500 unless an election be ordered by the mayor and city council, and if at said election the majority of the votes polled shall be in favor of creating such debt it shall be lawful for the city council to make issuance of the bonds as proposed in the ordinance submitting the same at the election, at the election so held, but if a majority of the votes polled shall be against the creation of such debt it shall be unlawful for the city council to issue the bonds.

"In all elections determining the expenditure of money for the assumption of debt only those shall be qualified to vote who pay taxes on property in said city and are legally qualified voters therein.

"No bond shall be issued drawing more than five per cent. interest and they shall be invalid if sold for less than par and accrued interest, and all bonds shall express upon their face the purpose for which they are issued.

"The ordinance authorizing any bonds to be issued shall provide for the creation of a sinking fund sufficient to pay the bonds at maturity and make provisions for payment of interest thereof as it matures and said sinking fund may be invested in the bonds of the state of Texas or such funds may be used for the purchase of bonds of the city of Gainesville which are not yet due and neither interest nor sinking fund shall be devoted to any other purpose whatever."

Article IV, §§ 2, 3, provide:

"2. Provided, further, that the city of Gainesville shall have authority to construct or purchase public utilities and pledge said public utilities so constructed, together with the revenues and profits therefrom to secure the bonds and the interest thereon for said construction.

"3: Provided, that said city may issue not exceeding $2,500.00 in bonds when authorized by law so to do without holding an election for that purpose."

Article II, § 3, provides:

"Provided further, that the specification of particular powers shall never be construed as a limitation upon the general powers herein granted; it being intended by this act to grant and bestow upon the inhabitants of the city of Gainesville full power of self government, and it shall have and exercise all powers of munici-

pal government not prohibited to it by this charter or by some general law of the state of Texas, or by the provisions of the Constitution of the state of Texas."

[2] Appellees, in substance, contend that the specified obligations are not "bonds," but simply "warrants," which, under the general powers conferred by section 1 of article 4, when read in connection with section 3, art. II of the charter, were lawfully authorized and constitute valid obligations of the city without an election and vote of the majority of the citizens in favor of creating the debt, as is required in the case of the issuance of bonds in excess of $2,500. Generally speaking and when used to describe a county or city obligation, a "warrant," we think, as contradistinguished from a bond, is in substance but a written declaration of the city or municipality evidencing an existing debt which may be registered and made payable as provided by law out of the current funds. We find this definition in 4 Words and Phrases, Second Series, p. 952:

"A 'township warrant' is an anomalous kind of a contract. It is not a promissory note in any sense of the word. Standing alone, it creates no liability against the township, and in order to sustain an action based upon it the complaint must show by proper averment what it was given for, and if for goods of any character, that they were suitable, useful, and necessary for the township, and that the township received and used them. Mitchelltree School Tp. of Martin County v. Carnahan, 42 Ind. App. 473, 84 N. E. 520, 522."

Judge Dillon, vol. 2, § 850, says:

"A warrant is the command of the council, board or official, whose duty it is to pass upon the validity and determine the amount of a claim against the municipality, to the treasurer to pay money out of any funds in the city treasury, which are or may become available for the purpose specified, to a designated person whose claim therefor has been duly adjusted and allowed."

In section 851 he further says:

"Being merely devices for liquidating the amount legitimately due to the creditors of the municipality, and instruments necessary to carry on the machinery of the municipal administration, the power to issue warrants or orders on the municipal treasury, although not expressly conferred, may be implied as incidental to municipal or quasi municipal corporations, whenever it is not prohibited or restricted by constitution, charter, or statute. Being simply a means of paying a debt, it is necessarily implied that a valid debt or obligation of the corporation exists for which a warrant may be drawn. The warrant does not constitute a new debt, but is only the prescribed means for drawing money from the municipal treasury to pay an existing debt.

"Without express authority from the Legislature, a municipality cannot discount its warrants to its creditors so as to make them equivalent to cash, or issue warrants for more than the sum actually due the claimant; and as to the excess, they are void, and the holder will be treated only as the equitable assignee of the valid legal claim of the payee. To give a warrant validity, it is essential that it should be delivered to the person entitled thereto." .

[3-5] A "warrant," in the proper acceptance of that term, is clearly distinguishable, we think, from the obligations of the city of Gainesville now under consideration. Those obligations are. not lacking in any essential feature, as we view them, from promissory notes or bonds, and it is a clear requirement of the city charter which we have quoted that bonds in excess of $2,500, payable in a series of years and negotiable in form, cannot be lawfully issued until and when an election shall have been duly ordered, and it shall be found that a majority of the qualified voters favor creating the debt. As it seems to us, the charter, as well as other constitutional and statutory provisions, is careful to safeguard the interest of property owning citizens of a municipality against unauthorized or excessive indebtedness, and these provisions ought not and cannot, we think, be avoided by an arbitrary designation of an obligation properly coming within the meaning of a bonded obligation as a "warrant." In Goodner v. Ramsey County, 11 Minn. 31 (Gil. 12), Shawnee County v. Carter, 2 Kan. 115, and Hull v. Marshall County, 12 Iowa, 142, it is held in effect, that authority to issue county orders gives no authority to issue negotiable bonds payable at a future day with interest coupons attached. And contrary to one of the contentions of appellees in this case, the city has no implied power to issue negotiable paper. See Hill v. Memphis, 134 U. S. 198, 10 S. Ct. 562, 33 L. Ed. 887; Tensas Parish v. Britton, 15 Wall. 566, 21 L. Ed. 251; Nashville v. Ray, 19 Wall. 468, 22 L. Ed. 164; Brenham v. German-American Bank, 144 U. S. 173, 12 S. Ct. 559, 36 L. Ed. 390. See, also, Dillon, vol. 2, § 187, where the question is discussed.

The case of Foster v. City of Waco, 113 Tex. 352, 255 S. W. 1104, is a case quite similar to the one we have before us. In that case Foster and another instituted suit against the city of Waco, alleging in substance that the city.had entered into a contract with one Bynum by which the city became the purchaser of 200 acres of land for cemetery purposes. It was alleged that the purchase price for the land was $50,000, $5,000 of which was paid in cash, and for the remaining $45,000 the city executed nine promissory negotiable notes for $5,000 each, payable to Bynum, bearing 6 per cent. per annum interest, dated January 1, 1918, the first of which would mature January 1, 1919, and one of the others on the 1st day of each succeeding January up to and including January 1, 1927. It was further pleaded that the question of whether or not the city should issue the notes mentioned had never been submitted to the voters of the municipality, and on that account were ille-

gally issued, etc. It was pointed out in the opinion, which was written by Chief Justice Cureton, that articles of the charter of the city conferred express power to acquire cemeteries, and it seems to have been contended there, as here, that the general power to acquire cemeteries necessarily implied authority to do everything necessary to give effect to the general power given. In disposing of this contention, Judge Cureton said:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation—not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of. every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby, or by some legislative act applicable thereto. All acts beyond the scope of the powers granted are void. 1 Dillon on Municipal Corporations (5th Ed.) § 237; 28 Cyc. p. 1533; 19 R. C. L. § 75; City of Brenham v. Brenham Water Co., 67 Tex. 542, 553, 554, 4 S. W. 143; Citizens' Bank v. City of Terrell, 78 Tex. 456, 14 S. W. 1003.

"It is apparent that authority to execute and issue long-time notes is not indispensable, under the charter of the city of Waco, to the exercise of the power to purchase cemeteries. Cemetery grounds could be lawfully purchased out of the current revenues of the city, or by incurring a deficit not in excess of $50,000, payable as provided for in article 211; or they could be purchased out of the proceeds of bonds issued under article 202."

It was further said in that case that:

"A municipal power will be implied only when without its exercise the expressed duty or authority would be rendered nugatory. Cleburne v. Gulf, etc., Ry. Co., 66 Tex. 457, 461, 1 S. W. 342.

"To deny the implied authority to issue the notes in this case does not render nugatory the expressed power to purchase cemeteries as above shown.

"This court has held that authority to borrow money, create a debt, or issue bonds, was not necessarily incident to the power to build courthouses, or to buy grounds and build schoolhouses. Robertson v. Breedlove, 61 Tex. 316; Waxahachie v. Brown, 67 Tex. 519, 528, 4 S. W. 207.

"The Supreme Court of the United States has announced the same rule. Claiborne County v. Brooks, 111 U. S. 401, 406 [4 S. Ct. 489], 28 L. Ed. 470."

[6] We think what has been so clearly stated by Judge Cureton in the case of Foster v. City of Waco applies with equal force to the case we have before us. The general power

of the city of Gainesville to establish an incinerating plant for the disposition of sewerage cannot be lawfully extended by implication so as to authorize the issuance and promulgation of the long-time obligations complained of in this case. We think it clear that in the absence of an election favoring their issuance they are void.

We accordingly conclude that the order of judgment below dissolving the injunction should be reversed and set aside, and the temporary injunction theretofore issued reinstated and held to be in full force and effect.

BUCK, J., not sitting.