

# THE ATTORNEY GENERAL

# OF TEXAS

## AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

March 26, 1958

Honorable Durwood Manford
Board of Water Engineers
1410 Lavaca Street
Austin, Texas

Opinion No. WW-399

Re: Authority of Reagan County
Water Supply District to
exercise power of eminent
domain, to furnish water to
residents of City of Big
Lake, and related questions.

Dear Mr. Manford:

You request our opinion with respect to the following three
questions pertaining to the Reagan County Water Supply Dis-
trict:

"1. Does the district have the authority
to exercise the power of eminent domain
for the acquisition of land situated within
the boundaries of the district and needed
by it in furtherance of the purposes for
which the district was created?

"2. If the answer to Question 1 is 'Yes',
then may the district exercise such authority
within the district for the acquisition of
water rights?

"3. Big Lake is the county seat of Reagan
County. It is reported that all but 27
resident landowners of Reagan County reside
within the area of Big Lake city limits.
Does the district have the legal right to
use the proceeds derived from the sale of
bonds authorized by Section 5 of Article
8280-181 for the purpose of furnishing the
City of Big Lake and its residents with
water?"

You also state that:

> "The Board finds that the questions in-
> volved do not only affect this district
> but other districts in the State and do
> affect the orderly development of the
> water program of Texas, . . ."

This District was specially created by Acts 54th Leg., 1955,
Ch. 504, p. 1259, codified as Article 8280-181, V.C.S., Sec-
tions 2 and 9 thereof being as follows:

> "Sec. 2. The District shall have and
> exercise, and is hereby vested with all
> of the rights, powers, privileges and
> duties conferred and imposed by the
> general laws of this State now in force
> or hereafter enacted, applicable to
> water control and improvement districts
> created under authority of Section 59,
> Article 16, of the Constitution, but to
> the extent that the provisions of any such
> general laws may be in conflict or incon-
> sistent with the provisions of this Act,
> the provisions of this Act shall prevail.
> All such General laws are hereby incor-
> porated by reference with the same effect
> as if incorporated in full in this Act.
> Provided, that the District shall not be
> empowered to exercise the power of eminent
> domain outside the boundaries of the Dis-
> trict, except for the condemnation of ease-
> ments and right of ways for ditches or
> pipelines for the transportation of water."

* * *

> "Sec. 9. In the event it becomes necessary
> in the exercise of the powers conferred by
> this Act that any railroad line or right of
> way should be relocated, the cost of such

> relocation and any actual and reasonable
> damage incurred in changing and adjusting
> the lines and grades of such railroad
> shall be paid by the District."

As the questions asked are of a hypothetical nature and are general in scope, the answers must be correspondingly general. Specific fact situations may arise in which the general rules will not be wholly applicable.

The portions of Article 8280-181 quoted above are plain as to the adoption for this District of the general law applicable to water control and improvement districts, and the authorities setting out the purposes of the creation and the powers of such districts, including their power of eminent domain, are reviewed, in part, in Lower Nueces River Water Supply District v. Cartwright, 274 S.W. 2d 199 (Civ.App. 1954, error ref. n.r.e.) at page 206, as follows:

> "The general laws of the State applicable
> to water control and improvement districts
> . . . are designated as Articles 7880-1 to
> 7880-153, inclusive, of Vernon's Ann. Tex.
> Stats. The basic Act was passed by the
> 39th Legislature, Acts 1925, p. 86, ch. 25,
> and numerous amendments thereto have been
> adopted.
>
> "Among the purposes for which such districts
> may be organized is that specifically stated
> in Subdivision (a) of Section 59 of Article
> 16, Constitution of Texas, namely, 'the con-
> trol, storing, preservation and distribution
> of its (the State's) storm and flood waters,
> the waters of its rivers and streams, for
> irrigation, power and all other useful pur-
> poses, * * *.' Article 7880-3. To these
> districts are delegated 'such functions,
> powers, authority, rights and duties as may
> permit the accomplishments of the purposes
> for which such districts may be created, in-
> cluding the investigation, and in case a plan

for improvements is adopted, then, the construction, maintenance, and operation of all necessary improvements, plants, works and facilities, the acquisition of water rights and all other properties, lands, tenements, easements, and all other rights helpful to the purpose of the organization of the district, subject only to the restrictions imposed by the Constitution of the State of Texas or that of the United States: * * *.' Article 7880-7.

"A water control and improvement district is further empowered 'to construct all plants, works, and improvements necessary to the purpose for which it is organized and incident thereto. * * * (They) may construct all works and improvements necessary for the prevention of floods, the irrigation of land in such districts, for drainage of lands and construction of levees to protect same from overflow, to alter land elevations where correction is needed, and to supply water for municipal uses, domestic uses, power and commercial purposes, and all other beneficial uses or controls.' Article 7880-48."

\* \* \*

"Articles 7880-125 and 7880-126 relate to the property of a water control and improvement district and its powers of eminent domain. Among other means, such districts are authorized to acquire under the power of eminent domain, 'all lands, materials, borrow and waste grounds, easements, rights of way and everything deemed necessary, incident or helpful for the purpose of accomplishing any one or more of the objects authorized for water control and improvement districts, which shall be held to mean the accomplishment of said objects by any practicable mechanical means: * * *.'    A detailed procedure is likewise

> provided for the taking of lands 'either
> within or without the District,' under the
> power of eminent domain."

A specific example of a type of property which a water control
and improvement district may condemn is given in the case of
Chicago, R.I. & Ry. Co. v. Tarrant County W.C. & I.D. No. 1,
73 S.W. 2d 147, certified questions answered, 123 Tex. 432,
73 S.W. 2d 55; certiorari denied 55 S. Ct. 921, 295 U.S. 762
(1934), where certain trackage belonging to the defendant rail-
road was condemned, the court saying, at page 56:

> "The appellee is a water control and im-
> provement district, a governmental agency,
> body corporate and politic, organized
> under the Constitution and laws of this
> state, and is entitled to condemn the
> property in controversy. The statutes
> relative to the organization of the dis-
> trict, its purposes and operations, are
> elaborate ones, designed to accomplish
> the objects specified in the conservation
> amendment to the Constitution (Section
> 59a of Article 16, Constitution of Texas),
> compliance with which is here admitted."
> (Matter in parentheses added)

An exception to the general rule arises in the case of property
of a municipal corporation or governmental subdivision already
devoted to public use. Ordinarily, the power of eminent domain
extends only to the taking of private property, and does not
authorize the taking of the property of the state, or of the
subordinate municipalities through whose agency the state
government is administered, by the exercise of the right of
eminent domain, unless expressly authorized by statute. 11 Mc-
Quillin on Municipal Corporations (1950) 414, Sections 32.73
and 32.74.

Exercise by such Districts of the power of eminent domain for
some purposes is additionally authorized in Article 7472b, V.C.S.,
but is limited in Article 7584, V.C.S.

The authority of the District to condemn water rights, inquired about in your second question, would depend upon the specific facts in each case, such as the purpose for which the water will be used under the condemned water rights, the purpose for which waters are presently being used under the water rights, and the legal characteristics of the present owner or claimant to the water rights. For instance, a District could not condemn a city's water rights under which it supplies water for domestic purposes in order to provide water for irrigation, but a District could ordinarily condemn irrigation rights in order to provide water for domestic purposes.

As a general rule, but subject to exceptions which may result from varying factual situations, your first and second questions should be answered in the affirmative.

As to your third question, the legal right of the District to use proceeds derived from sale of bonds authorized by Section 5 of Article 8280-181 for the ultimate purpose of furnishing the City of Big Lake and its residents with water would depend upon the purpose of issuance of the bonds as stated in the voted proposition and throughout the proceedings relative to issuance of the bonds.

Bonds may be issued only for a purpose specifically authorized by law and the proceeds of the sale thereof must be devoted exclusively to such purpose. Beaumont v. Matthew Cartwright Land, etc., Co., 224 S.W. 589 (Civ.App. 1920, error refused); Simpson v. City of Nacogdoches, 152 S.W. 858 (Civ.App. 1912, error dismissed); Keel v. Pulte, 10 S.W. 2d 694, reversing 297 S.W. 241 (Comm.App. 1928).

There is no statutory authorization for the issuance of bonds by the District for the purpose of furnishing the City of Big Lake with water.

However, it is clear that such a district may ordinarily issue its bonds in conformity with the procedure authorized by law, and pursuant to the water conservation purposes set out in Section 59(a) of Article XVI, Constitution of Texas, for the purpose of constructing a waterworks system (Article 7880-48,

as amended) and from such system it may "award use of waters of the District" for domestic and municipal use (Article 7880-4a, as amended) and may charge for water furnished (Article 7880-106).

We do not here pass upon the authority of the District and the City to enter into a long-term contract relative to the use of waters of the District, as the question is not presented.

### SUMMARY

As a general rule, but subject to exceptions resulting from varying fact situations, a water control and improvement district may exercise the power of eminent domain for the acquisition of land and water rights situated within the district.

Such a district may ordinarily issue its bonds for the purpose of construction of a waterworks system, and may then award use of its waters for domestic and municipal use and may charge therefor.

Yours very truly,

WILL WILSON
Attorney General of Texas

By

Howard W. Mays
Assistant

APPROVED:
OPINION COMMITTEE

George P. Blackburn, Chairman

Wallace Finfrock
Morgan Nesbitt
Richard Stone

REVIEWED FOR THE ATTORNEY GENERAL
By: W. V. GEPPERT