# WADE *v.* TRAVIS COUNTY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 267. Argued April 26, 1899. — Decided May 15, 1899.

*Mitchell County* v. *Bank of Paducah*, 91 Texas, 361, which was an action upon interest coupons on bonds issued by the county for the purpose of building a court house and jail, and for constructing and purchasing bridges, in which it was held that as the constitution and laws of Texas authorizing the creation of a debt for such purposes require that provision should be made for the interest and for a sinking fund for the redemption of the debt, it was the duty of the court, in an action brought by a *bona fide* holder of bonds issued under the law to so construe it as to make them valid and give effect to them, is followed by this court, even if it should be found to differ from previous decisions of the Supreme Court of Texas, in force when the decision of the court below in this case was made.

THIS was an action brought in the Circuit Court for the Western District of Texas by the plaintiff Wade, who is a citizen of the State of Illinois, against the county of Travis, to recover upon certain interest coupons detached from forty-seven bonds issued by the defendant for the purpose of building an iron bridge across the Colorado River.

The petitioner set forth that in July, 1888, the defendant, being authorized so to do, entered into a contract with the King Iron Bridge Manufacturing Company of Cleveland, Ohio, for the construction of a bridge for public use over the Colorado River, the company agreeing to complete the same by November 15, 1888, in consideration of which the defendant

agreed to pay the sum of $47,000 in six per cent bonds, payable in twenty years after date.

That, prior to the making of such contract, to wit, February 23, 1888, the defendant, acting through its commissioners' court, levied for the year 1888 and subsequent years, until otherwise ordered, an annual *ad valorem* tax of twenty cents for general purposes, and an annual *ad valorem* tax of fifteen cents for road and bridge purposes, on each one hundred dollars' worth of taxable property in such county; that on February 13, 1889, the commissioners' court of the county levied for the year 1889 an *ad valorem* tax of fifteen cents on each one hundred dollars' worth of property for road and bridge purposes, and an *ad valorem* tax of five cents to create a sinking fund for bridge bonds, and to pay the interest on such bonds; that the defendant delivered to the bridge company upon its contract for erecting the bridge five bonds on December 6, 1888, ten bonds on December 22, 1888, ten bonds on February 12, 1889, and the remaining twenty-two of such bonds on July 3, 1889, such bonds being signed by the county judge, countersigned by the county clerk and registered by the county treasurer; that the several levies in question had not been appropriated for any other purpose by the county, or, at least, a sufficient portion of them remained unappropriated to pay the interest and sinking fund upon such bonds, and that it was the intention of the commissioners' court to use these levies with a view of providing an annual fund sufficient to pay the interest, and to provide the sinking fund required by law. The petition further averred that plaintiff purchased the coupons for a good and valuable consideration in open market, and that he is the legal owner and holder of the same; that on January 16, 1896, he presented such coupons to the county treasurer and demanded payment thereof, which was refused.

The county demurred to the petition upon six different grounds, the first and material one of which was that the petition failed to allege that "at the time the debt was created for which the bonds were issued, upon the coupons of which this suit is brought, any provision was made for the

interest, and at least two per cent sinking fund upon such bonds."

The Circuit Court was of opinion that, at the date of the execution of the contract for erecting the bridge, the commissioners' court should have made a distinct and specific provision for the interest upon such bonds and for a sinking fund, and thereupon sustained the demurrer and dismissed the cause. 72 Fed. Rep. 985.

The plaintiff appealed to the Circuit Court of Appeals, which affirmed the judgment of the Circuit Court. 52 U. S. App. 395. Upon plaintiff's petition a writ of certiorari was subsequently allowed by this court.

*Mr. Joseph Paxton Blair* and *Mr. Frank W. Hackett* for Wade.

*Mr. Clarence H. Miller* for Travis County. *Mr. Franz Fisat* was on his brief.

Mr. JUSTICE BROWN, after making the foregoing statement, delivered the opinion of the court.

This case involves the validity of certain bonds issued by the county of Travis in payment to the King Iron Bridge Manufacturing Company for the construction of a bridge over the Colorado River; and, incidentally, the weight to be given to alleged conflicting decisions of the Supreme Court of Texas as to the validity of such bonds.

As bearing upon this question, the following sections of Article XI of the constitution of Texas, upon the subject of "Municipal Corporations," are pertinent:

"SEC. 2. The construction of jails, court houses and bridges, and the establishment of county poor houses and farms, and the laying out, construction and repairing of county roads, shall be provided for by general laws."

"SEC. 7. All counties and cities bordering on the coast of the Gulf of Mexico are hereby authorized, upon a vote of two-thirds of the taxpayers therein, (to be ascertained as may be

provided by law,) to levy and collect such tax for construction of sea walls, breakwaters or sanitary purposes, as may be authorized by law, and may create a debt for such works and issue bonds in evidence thereof. But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and to provide at least two per cent as a sinking fund; and the condemnation of the right of way for the erection of such works shall be fully provided for."

In apparent compliance with the sections above quoted, the legislature in 1887 enacted the following law, c. 141, § 1 :

"SEC. 1. That the county commissioners' court of the several counties of this State are hereby authorized and empowered to issue bonds of said county, with interest coupons attached, in such amounts as may be necessary, for the purpose of buying or constructing bridges for public uses within such county, said bonds to run not exceeding twenty years, and bearing interest at any rate not to exceed eight per cent per annum.

"SEC. 2. The commissioners' court shall levy an annual *ad valorem* tax, not to exceed fifteen cents on the one hundred dollars' valuation, sufficient to pay the interest on and create a sinking fund for the redemption of said bonds. The sinking fund herein provided for shall not be less than four per cent on the full sum for which the bonds are issued."

It is admitted that no provision was made on July 3, 1888, "at the time of creating" the debt, for levying and collecting a sufficient tax to pay the interest thereon, and two per cent for a sinking fund, as required by the second clause of section seven, if said clause be applicable to a debt incurred for building bridges. It was alleged in the petition, however, that in the February preceding the commissioners' court ordered an *ad valorem* tax of twenty cents for general purposes, and an annual *ad valorem* tax of fifteen cents for road and bridge purposes; and it also appeared that in the following February (1889) it ordered an annual *ad valorem* tax of twenty-five cents for general purposes; fifteen cents for road and bridge purposes; court-house and jail tax of five cents, and an *ad valorem*

tax of five cents to create a sinking fund for bridge bonds to pay the interest on said bonds.

Plaintiff insisted in the court below that the language of the last clause of section seven, requiring a provision to be made for the levying and collection of a tax to pay the interest and to provide a sinking fund, must be read in connection with the preceding clause of the section, and, taking the two together, that the last clause must be held to apply only to counties bordering on the Gulf of Mexico. Both the Circuit Court and the Court of Appeals, however, held that the last clause contained a separate and independent provision, and was applicable to the contract made by the county for the building of this bridge, and that, the petition of the plaintiff failing to show compliance with it, the contract was void and the bonds issued without authority of law. Both courts relied upon the construction given by the Supreme Court of Texas in numerous cases to this section of the constitution.

It is important in this connection to note that the opinion of the Circuit Court was pronounced on March 13, 1896, and that of the Court of Appeals on June 16, 1897. Since that time, it is asserted that the Supreme Court of Texas has taken a somewhat different view of the law, and an examination of these several decisions becomes important. In the earliest of them, *Terrell* v. *Dessaint,* 71 Texas, 770, 773, (1888,) which was an action on a promissory note given by the city in payment for material for water works supplies, it was squarely held that the last clause of section seven, above quoted, must be held to apply to all cities alike, and that the clause contained no word or words which restricted its application to the cities previously mentioned in the same section. "The language is general and unqualified," said the court, "and we find nothing in the context to indicate that the framers of the constitution did not mean precisely what it said; that is, that no city shall create any debt without providing, by taxation, for the payment of the sinking fund and interest." It was also held that a debt of $1500 for materials to extend its water works was within the clause in question, and that as the current expenses proper of the city exceeded its resources for

general purposes, and no appropriation was made for the payment of this debt, there could be no recovery.

In *Bassett* v. *El Paso*, 88 Texas, 168, (1895) it was held that the language and purpose of the constitution were satisfied by an order for the annual collection by taxation of a " sufficient sum to pay the interest thereon and create a sinking fund," etc., although it did not fix the rate or per cent of taxation for each year by which the sum was to be collected, but left the fixing of such rate for each successive year to the commissioners' court or the city council. It was contended that the ordinance, which provided for the issue of water works bonds, was void, because it did not levy a tax, but delegated to the assessing and collecting officers the power to make such levy from year to year. But it was said that " to so construe these provisions as to require, at the time the debt is created, the levy of a fixed tax to be collected through a long series of years, without reference to the unequal 'sums' that would in all probability be realized therefrom, instead of the collection annually of a certain ' sufficient sum ' to pay the annual interest and create the sinking fund required by law, would be doing violence to the language used, and authorize, in cases where values rapidly increase, the extortion from the taxpayers of large amounts of money in excess of the amount necessary to satisfy the interest and principal of the bonds, and this in turn would invite municipal corruption and extravagance."

In *McNeal* v. *Waco*, 89 Texas, 83, (1895) plaintiff sued the city of Waco on a contract for building cisterns for fire protection, to recover the contract price for one and damages for refusing to allow him to complete the others. The petition failed to show a provision for taxes to pay interest and a sinking fund, or an existing fund for the payment; nor did the contract show facts from which the court could say that it was an item of ordinary expenditure. It was held that a general demurrer to the petition should have been sustained, and it was also held that the word " debt " included every pecuniary obligation imposed by contract outside of the current expenditures for the year. To same effect is *Howard* v. *Smith*, 91 Texas, 8.

Such was the construction placed by the Supreme Court of Texas upon the constitutional provision at the time when the case under consideration was decided by the courts below. It was held by the Circuit Court that the county commissioners' court should have made provision at the time the contract was executed, July 3, 1888, by levy of a tax or otherwise for a sinking fund, and the interest on the bonds issued for the erection of the bridge; that the levy made by the commissioners' court in February, 1888, could not be held applicable to the bonds in controversy, for the manifest reason that the contract for the erection of the bridge was not then in existence nor even in the contemplation of the parties, so far as the allegations of the petition disclosed; that the general levy made in February, 1889, could not be held applicable to the bonds of the bridge company for two reasons: first, because it was made some six months after the execution of the contract; and, second, because the order of the commissioners' court, authorizing the levy, made no reference whatever to the bonds in controversy nor to the contract between the county and the bridge company. The Circuit Court of Appeals came practically to the same conclusion.

Since these cases were decided, however, the Supreme Court of Texas has put a construction upon the constitution which fully supports the position of the plaintiff in this case. In *Mitchell County* v. *Bank of Paducah*, 91 Texas, 361, decided in January, 1898, the action was upon interest coupons attached to bonds issued by the county for the purpose of building a court house and jail, and upon others for constructing and purchasing bridges. An act had been passed in 1881 with reference to the creation of court house debts similar to the act subsequently passed in 1887 respecting bridge bonds, a copy of which is given above. The same defence was made — that at the time of the creation of the debts the county made no provision for levying and collecting a sufficient tax to pay the interest and sinking fund, although for the year 1881 the court levied a court house and jail tax of twenty-five cents on the one hundred dollars, repeated during subsequent years, and increased to fifty cents; and every year after the issue of the

bonds for bridge purposes the court levied fifteen cents on the one hundred dollars as a tax for road and bridge purposes. It was held, quoting *Bassett* v. *El Paso*, 88 Texas, 168, 175, that it was unnecessary to ascertain the rate per cent required to be levied in order to raise the proper sum and to actually levy that rate of tax at the time; that if the laws of 1881 and 1887 had never been passed, the county would have had no authority under the constitution to contract the debts represented by the bonds, nor to levy a tax for the payment of the interest and sinking fund on such debts. The power to do so could be derived from the legislature only. "We understand," said the court, "that the provision required by the constitution means such fixed and definite arrangements for the levying and collecting of such tax as would become a legal right in favor of the bondholders of the bonds issued thereon, or in favor of any person to whom such debt might be payable. It is not sufficient that the municipal authorities should by the law be authorized to levy and collect a tax sufficient to produce a sinking fund greater than two per cent, but to comply with the constitution the law must itself provide for a sinking fund not less than two per cent, or require of the municipal authorities to levy and collect a tax sufficient to produce the minimum prescribed by the constitution." It was held that the laws of 1881 and 1887, having been enacted for the purpose of putting into force the constitutional provisions, it was the duty of the courts to so construe the laws as to make them valid and give effect to them. The court came to the conclusion that these laws did make such provision for the levying and collecting of a tax as was required by the constitution, and that, in case the court had refused to levy the tax after the bonds were issued and sold, the bondholders would have been entitled to a mandamus to compel the commissioners' court to levy such tax as purely a ministerial duty. The bonds, with certain immaterial exceptions, were held to be valid obligations of the county.

It is quite evident that if this case had been decided and called to the attention of the courts below, the validity of the bonds involved in this action would have been sustained, and

the main question involved in this case is whether we shall give effect to this decision of the Supreme Court of Texas, pronounced since the case under consideration was decided in the courts below, and giving, as is claimed at least, a somewhat different construction to the constitution of the State.

We do not ourselves perceive any such inconsistency between the case of *Mitchell County* v. *Bank of Paducah,* and the earlier cases, as justifies the county, in the case under consideration, in claiming that the Supreme Court of Texas had overruled the settled law of the State and set in motion a new departure. No such inconsistency is indicated in the opinion in the *Mitchell County case;* so far as the prior cases are cited at all they are cited with approval, and there is certainly nothing to indicate that the court intended to overrule them. That court had not changed in its *personnel* since the prior judgments, except the first, were pronounced, and it is not probable that the judges would have changed their views without some reference to such change. Indeed, but one of the earlier cases was cited in the *Mitchell County case,* (*Bassett* v. *El Paso,* 88 Texas, 168,) and that supports rather than conflicts with the opinion. As we read them, they merely decided that some provision for payment must be made. In the *Mitchell County case* the question was for the first time presented whether the laws of 1881 and 1887 were constitutional, and whether action taken under these laws was an adequate compliance with the requirement that provision should be made "at the time of creating" the debt for a sufficient tax to pay the interest and to provide a two per cent sinking fund. It was held that they were. This over-ruled nothing, because the question had never before been decided, and the point was not made in the courts below in this case. We are simply called upon, then, to determine what is the law of Texas upon the subject, since, under Revised Statutes, section 721, the "laws of the several States . . . shall be regarded as rules of decision in trials at common law in the courts of the United States." While, if this case had been brought before this court before the decision in the *Mitchell County case,* we might have taken the view that was

taken by the courts below, treating the question as one hitherto unsettled in that State, we find ourselves relieved of any embarrassment by the decision in the *Mitchell County case,* which manifestly applies to this case and requires a reversal of their judgment.

But assuming that the later case was intended to overrule the prior ones, and to lay down a different rule upon the subject, our conclusion would not be different. In determining what the laws of the several States are, which will be regarded as rules of decision, we are bound to look, not only at their constitutions and statutes, but at the decisions of their highest courts giving construction to them. *Polk's Lessee* v. *Wendal,* 9 Cranch, 87; *Luther* v. *Borden,* 7 How. 1, 40; *Nesmith* v. *Sheldon,* 7 How. 812; *Jefferson Branch Bank* v. *Skelly,* 1 Black, 436; *Leffingwell* v. *Warren,* 2 Black, 599; *Christy* v. *Pridgeon,* 4 Wall. 196; *Post* v. *Supervisors,* 105 U. S. 667; *Bucher* v. *Cheshire Railroad Co.,* 125 U. S. 555.

If there be any inconsistency in the opinions of these courts, the general rule is that we follow the latest settled adjudications in preference to the earlier ones. The case of *United States* v. *Morrison,* 4 Pet. 124, seems to be directly in point. The United States recovered judgment against Morrison, upon which a *fi. fa.* was issued, goods taken in execution and restored to the debtor under a forthcoming bond. This bond having been forfeited, an execution was awarded thereon by the judgment of the District Court, rendered April, 1822, which it was asserted created a lien upon the lands, and overreached certain conveyances under which the defendants claimed, dated February and March, 1823. The Circuit Court was of opinion that the lien did not overreach these conveyances. But the Court of Appeals of Virginia having subsequently decided that the lien of a judgment continued pending proceedings on a writ of *fi. fa.,* this court adopted this subsequent construction by such court, and reversed the decree of the Circuit Court.

In *Green* v. *Neal's Lessee,* 6 Pet. 291, a construction given by the Supreme Court of Tennessee to the statute of limitations of that State having been overruled, this court followed

the later case, although it had previously adopted the rule laid down in the overruled cases. See also *Leffingwell v. Warren*, 2 Black, 599; *Fairfield* v. *Gallatin County*, 100 U. S. 47.

In *Morgan* v. *Curtenius*, 20 How. 1, the Circuit Court placed a construction upon an act of the legislature in accordance with a decision of the Supreme Court of Illinois with reference to the very same conveyance, and it was held that that, being the settled rule of property which that court was bound to follow, this court would affirm its judgment, though the Supreme Court of the State had subsequently overruled its own decision, and had given the act and the same conveyance a different construction. We do not consider this case as necessarily conflicting with those above cited.

An exception has been admitted to this rule, where, upon the faith of state decisions affirming the validity of contracts made or bonds issued under a certain statute, other contracts have been made or bonds issued under the same statute before the prior cases were overruled. Such contracts and bonds have been held to be valid, upon the principle that the holders upon purchasing such bonds and the parties to such contracts were entitled to rely upon the prior decisions as settling the law of the State. To have held otherwise would enable the State to set a trap for its creditors by inducing them to subscribe to bonds and then withdrawing their own security. *Gelpcke* v. *Dubuque*, 1 Wall. 175; *Havemeyer* v. *Iowa County*, 3 Wall. 294; *Mitchell* v. *Burlington*, 4 Wall. 270; *Riggs* v. *Johnson County*, 6 Wall. 166; *Lee County* v. *Rogers*, 7 Wall. 181; *Chicago* v. *Sheldon*, 9 Wall. 50; *Olcott* v. *Supervisors*, 16 Wall. 678; *Douglass* v. *Pike County*, 101 U. S. 677; *Burgess* v. *Seligman*, 107 U. S. 20.

Obviously this class of cases has no application here. The bonds were issued in good faith for a valuable consideration received by the county, and were purchased by the plaintiff with no notice of infirmity attaching to them. If certain decisions, pronounced after the bonds were issued, threw doubt upon their validity, those doubts have been removed by a later decision pronouncing unequivocally in favor of their

validity. In the theory of the law the construction given to the bonds of this description in the *Mitchell County case* is and always has been the proper one, and as such, we have no hesitation in following it. So far as judgments rendered in other cases which are final and unappealable are concerned, a different question arises.

The judgments of the Court of Appeals and of the Circuit Court must be

*Reversed, and the case remanded to the Circuit Court for the Western District of Texas for further proceedings in conformity with this opinion.*