**SIMMS v. CITY OF MT. PLEASANT et al.***
(No. 3584.)

Court of Civil Appeals of Texas. Texarkana.
Nov. 7, 1928.

Rehearing Denied Jan. 3, 1929.

*Writ of error dismissed.

Seb F. Caldwell, of Mt. Pleasant, for appellant.

Hiram G. Brown, of Mt. Pleasant, and W. H. Graham, of Pecos, for appellees.

HODGES, J. The city of Mt. Pleasant was incorporated under the general laws of Texas. Some time prior to 1919 the city adopted the provisions of chapter 11, tit. 22, of the Revised Civil Statutes of 1911, now articles 1086 to 1096, inclusive, of the Revised Civil Statutes of 1925. On September 7, 1927, the city passed an ordinance providing for paving several of its streets and for the construction of curbs and sidewalks. The appellant, Miss Nettie Simms, owns a lot abutting on one of the streets to be paved. The ordinance provided that the abutting property owners should pay the entire cost of the curbs and sidewalks and two-thirds of the cost of the paving, including street intersections. The city was to pay that portion of the remainder not assessed against using the streets. The ordinance also provided that the cost assessed against abutting property owners should be evidenced by certificates, payable in five installments. A second ordinance was passed about the same time, awarding to O. L. Criger, one of the appellees, the contract for making the improvements contemplated. The second ordinance also provided that the amount payable by the city should be paid in interest-bearing warrants as the work progressed, and on estimates made by the city engineer. The amount was limited to $10,000, and the warrants were to be issued in denominations of $500 each. The first warrant was to be due November 1, 1929, and one warrant should mature annually thereafter for a period of 19 years. Other ordinances were passed, providing for a tax levy to create an interest and sinking fund for the retirement of the warrants at maturity and making individual assessments against the abutting property owners. This suit was filed by the appellant to cancel the ordinances above referred to and the contract entered into by the city with O. L. Criger. The trial before the court without a jury resulted in a judgment against the appellant.

The record before us contains several assignments of error, which for the purpose of this appeal may be considered as presenting two general objections to the judgment of the trial court. In one group of assignments it is contended that the amount assessed against the appellant as an abutting owner was excessive and was fixed by the council without first giving proper legal notice. In the other group an attack is made on the validity of the ordinances, upon the ground that the city had no authority to issue interest-bearing warrants payable in future years without first having submitted that question to the qualified voters of the city.

The objection to the amount of the appellant's assessment and the irregularity of the proceedings upon which that assessment was based was barred by article 1096, Rev. Civ. Stat. of 1925. That article provides that any property owner against whom, or whose property, an assessment or reassessment has been made, shall have the right to bring suit within 20 days thereafter to set aside or correct the same or any proceeding thereof on account of any error or invalidity therein. It further provides that thereafter such owner, his heirs, assigns, or successors shall be barred from bringing such an action.

Passing to the second objection, it may be said that even if the city exceeded its authority in providing for the issuance of the interest-bearing warrants without the consent of the electors, this court cannot grant the character of relief which the appellant seeks—that is, the cancellation of the alleged invalid ordinance. The adoption of a city ordinance by the governing body of a city is, like the enactment of a law by the Legislature of the state, an exercise of legislative power. Courts have no power to cancel such acts, but may, under certain conditions and at the instance of an aggrieved party, restrain their enforcement. However, such judicial authority can only be exercised when essential to the protection of some particular personal or property right. Courts have no general power to nullify legislative acts, and can inquire into their validity only as an incident to the power to prevent a private injury.

If the ordinances attacked in this proceeding are invalid the appellant may, in a proper suit, restrain their enforcement when that becomes necessary for her protection from an existing or threatened private injury. No such relief as that is sought in this proceeding. This case is, in all material respects, similar to the case of Tabb v. City of Mt. Pleasant, 12 S.W.(2d) 831, this day decided by this court. In the opinion written by Chief Justice Willson in that case can be found appropriate authorities relating to the question here involved.

The judgment of the trial court will be affirmed.

### On Motion for Rehearing.

In view of the argument made in the motion for rehearing we have concluded to discuss the issues presented more in detail. The appellant's amended original petition, on which the case was tried, is quite lengthy. After formal introductory averments, the pleader proceeded to copy, without comment, the ordinances of the city of Mt. Pleasant adopted on September 7, 1927, relating to certain street improvements. The first ordinance copied is one in which the improvements were ordered, the streets to be paved

described, plans and specifications previously prepared approved, and cost and mode of payment specified. The ordinance divided the streets to be paved into contiguous districts or units, numbered from 1 to 5, describing each district in detail. The cost of the paving was distributed as follows: Railroads and street railways occupying any portion of the streets to be paved were to pay the entire cost of the paving between the rails and two feet to each side; the abutting property owners were to pay the whole cost of constructing curbs and gutters and sidewalks, and two-thirds of the street paving, including street intersections, after deducting the amount to be paid by railroads. The remaining cost was to be paid by the city "either in cash or in warrants" of the city, bearing interest at the rate of 6 per cent. per annum, and payable over a series of years and from the future revenues of the city. The ordinance contained this further provision:

"The improvements in each district or unit shall constitute a separate and distinct district or unit of improvement, and the proceedings had for the improvement in one unit and the assessments made for the improvement in one unit and against property abutting thereon and against the owner or owners of any street or steam railway or railroad occupying, using or crossing the same shall in nowise be affected by any fact or circumstance in connection with the improvement in any other district or unit; and the city shall have the right to accept the work in any one unit as being complete and settle with the contractor therefor when completed and accepted, regardless of whether the work has been completed in any other unit or district."

The second ordinance copied was adopted on the same date. This ordinance provided for an award of the contract for constructing the improvements to O. L. Criger. It contained, among others, the following provision:

"That to provide for the payment of $10,-000.00 of the city's share of the cost of such improvements, or so much thereof as the city may be required to pay under the terms of said contract, warrants of said city, to be called 'City of Mount Pleasant Street Improvement Warrants, Series B-1927,' to be issued under and by virtue of the constitution and laws of Texas, for the purpose of paying said sum of $10,000.00 to said contractor or bearer."

The next instrument copied is the contract with Criger, which conforms to the provisions previously adopted by the city. The third ordinance, the one providing for assessing the cost of the improvements against the different abutting property owners, contains a detailed list of the lots abutting on the streets to be improved, and names of their owners. Appellant's is described as follows:

"Miss Nettie Simms.—176 feet on the south side of Christian Street, beginning 220.6 feet from the east line of Lide Avenue, described in Book 11, page 552, of the Deed Records of said county.

| | |
|---|---|
| Paving | $546 41 |
| Curb and gutter | 149 60 |
| Total | $696 01" |

The ordinance also contains this provision:

"Said assessment shall be due and payable as follows: In five equal installments as nearly as they can be calculated, falling due, respectively, on or before 10 days and 1, 2, 3 and 4 years from the date of completion of said work and acceptance thereof by said city in the respective units aforesaid as such unit is completed and accepted; and the contractor shall be entitled to special assessment certificate covering the share of the cost thereof assessed against abutting property and owners and against railways and owners," etc.

The next document copied into the plaintiff's petition was the proceedings of the city council on October 15 approving the bond of Criger in the sum of $15,000. The petition then states certain objections to the ordinances, which will be hereafter discussed. It concludes with the following prayer for relief:

"Wherefore, the defendants having been cited to appear at this court and answer plaintiff's petition, plaintiff prays that upon hearing of this petition the court enter its order adjudging and declaring that the said ordinances and contract are invalid and are of no force and effect in so far as she is concerned or affected. If she be mistaken as to this, then she prays that the court enter its order setting aside the said contract and ordinances in so far as they attempt to create a lien on her said property and charge her personally with the cost of the improvement on the said street intersections and remove the cloud upon the title of her property, and for such other and further relief as in law and equity, general and special, she may show herself to be entitled to."

The city answered by general demurrer and general denial, and specially pleaded that the assessing ordinance of September 21, 1927, of which the plaintiff complains, was repealed by the city council on October 15, 1927, and that on that date the council passed another ordinance levying assessments against the plaintiff for her share of improving the street in front of her property. It further pleaded, as a bar to plaintiff's right to complain of any irregularity in the assessing ordinance, her failure to file a suit within the time prescribed by law for the purpose of contesting the validity of any proceedings which affected her property.

In the trial of the case, which was before the court, the evidence consisted mainly of the ordinances set out in the plaintiff's peti-

836

tion. The city proved the repeal of the assessing ordinance of September 20, 1927, and the adoption of another on October 15. The caption of the second ordinance, which indicates its character, is as follows:

"Ordinance closing hearing given owners of property in the City of Mt. Pleasant, Texas, on East South First Street, and sundry other places in said city; passing upon protests and objections; levying assessments against property abutting said portions of said streets and other places and the owners thereof, and against railways using, occupying or crossing same and the owners thereof; fixing liens on said property, and authorizing the issuance of special assessment certificates to the contractor in payment of such assessments."

It was agreed in the trial that the approved assessed value of the property in the city of Mt. Pleasant was for the year 1926 $1,607,600, and for the year 1927 $1,756,650, and that those values were based upon approximately 60 per cent. of the true market value of the taxable property.

Criger was the only witness who testified in the trial. His testimony related mainly to the character of the work to be done under his contract and to the extent of the excavations required on the streets. He stated that appellant's property was in district or unit 4 and was situated on an elevation, and that the cost of excavating in front of her property would be above the average in the other districts. It was also proved that notice of the assessment had been given as required by law. There is no evidence that any property owner appeared to object to any of the ordinances, assessments, or other proceedings of the city council relating to the proposed improvements.

The sole purpose of this suit, as we construe appellant's pleadings and brief, is to remove a cloud from her title to a lot situated on one of the streets to be paved. The cloud complained of is the tax provided for in the ordinance referred to in her brief. Those taxes are of two kinds: One to be levied against abutting property and its owners only, and the other upon all the property within the city; the latter being for the purpose of paying the principal and interest on the warrants to be issued by the city in payment of its part of the cost of the improvements.

■ It is doubtful, to say the least, if the appellant has alleged facts sufficient to show any right to complain of any proceedings of the city, however invalid or irregular those proceedings might be. The only property which she alleges she owns within the city is described in her pleadings as "250 feet on the north side of Christian Street," which, it is alleged, was assessed as follows: "Paving, $782.36; curb and gutter, $253.40." The statement of facts contains an agreement

"that the property involved in this case was the homestead of the plaintiff, O. M. Tabb, on September 7, 1927, and at all times since up to this date." The ordinance describing the abutting lots and fixing the cost assessed against each shows that the property which appellant alleges she owns was assessed against O. M. Tabb. There is no evidence that appellant had any claim or title to that property. The assessing ordinance describes the property of "Miss Nettie Simms," who is the appellant, as "176 feet on the south side of Christian street, beginning 220.6 feet from the east line of Lide Avenue, described in Book 11, p. 552, of the deed records of said county. Paving, $546.41; curb and gutter, $149.60—total, $696.01." It thus appears that she claims to own a lot which the proof shows belongs to another party and is his homestead. The evidence tended to show that she owns a lot to which she does not in her pleading assert any title. No effort has been made to show that this variance was due to a mistake. In that state of the record the court could not remove a cloud from the title to land which the proof shows appellant did not own, or from the title to land which she did not in her pleadings claim to own. The judgment of the trial court might be affirmed upon that ground alone. But there are still other reasons which we think are sufficient to require an affirmance.

The objections urged in the appellant's brief to the city's proceedings may be summarized as follows: (1) That the city could not by ordinance divide the streets to be improved into districts or units and assess against a property owner in one district the cost of making improvements in another district; (2) that the city could not assess against the abutting property owners any part of the cost of paving street intersections; (3) that the contractor's construction bond was insufficient, and no maintenance bond had been executed by him; (4) that the warrants to be issued in payment of the city's part of the cost of the improvements were, in legal effect, negotiable instruments which the city had no power to issue without first being authorized by the taxpayers of the city at an election held for that purpose. It is also contended that these warrants were invalid because no sufficient provision had been made for the collection of an adequate interest and sinking fund.

■ The first three objections above enumerated were mere irregularities which might be waived by the property owners affected, and the right to urge them is lost unless an appropriate suit for relief is filed by the complaining party within 20 days after the final action of the city council. It appears from the record that no such suit was instituted, and for that reason those objections need not be further considered. However, appellant contends that the limitation

prescribed by article 1096, Revised Civil Statutes of 1925, is defensive matter, and that it devolved upon the city to plead and prove that no such suit was filed within the time allowed by the statute; that while the defense was pleaded, it was not proved. The city adopted the final assessing ordinance fixing the amount of taxes against the property owners on October 15. The record shows that the appellant went to trial on her amended original petition, which was filed on the 6th day of January, 1927, more than 2½ months after the final order of the city council was adopted. The original petition is not in the record, and there is no evidence of when it was filed. The judgment of the trial court was a general one, and there are no findings of fact or conclusions of law to indicate that it was based upon any particular ground. In passing upon the defense of limitation the trial court had a right to look to the original petition for the purpose of ascertaining when that instrument was filed, without its being offered in evidence. Texas & N. O. R. Co. v. Speights, 94 Tex. 350, 60 S. W. 659; Stewart v. Robbins, 27 Tex. Civ. App. 188, 65 S. W. 899; Ward v. Hinkle (Tex. Civ. App.) 252 S. W. 236; Allison v. Baird Development Co. (Tex. Civ. App.) 292 S. W. 956; Turkey State Bank v. Estelline State Bank (Tex. Civ. App.) 259 S. W. 679. See, also, District Court Rules 13 and 14. Of course the limitation here relied on applies only to such irregularities in the proceedings of the city council as might be waived by the interested parties, and not to those fundamental defects arising from a lack of power in the city to do what it undertook to accomplish, or to those proceedings which are absolutely void for any reason. Campbell v. City of Olney, 262 U. S. 352, 43 S. Ct. 559, 67 L. Ed. 1021; Herring v. City of Mexia (Tex. Civ. App.) 290 S. W. 793, and cases cited; Elmendorf v. City of San Antonio (Tex. Com. App.) 242 S. W. 185.

■ But aside from the defense of limitation we do not think there is any merit in the objections to which that defense might apply. The division of the streets to be improved into districts or contiguous units seems to have been intended mainly to furnish a basis of settlement with the contractor as the work progressed. If that was an irregularity, it is one which the appellant might waive, and of which she has no right to complain unless it resulted in placing an undue burden on her property. No such burden is shown by the evidence. On the contrary, the proof shows that the cost of making excavations in front of her property will be greater than the average cost of similar work in other districts. The statute authorizing such improvements contains no provisions which either expressly or impliedly prohibit such a system as that here adopted.

■ It is also contended that the city had no power to tax the abutting property owners for the cost of paving the street intersections. As supporting that contention, appellant refers to article 1082, which is a part of chapter 8 of title 28 of the Revised Civil Statutes. The evidence shows that several years prior to the time these proceedings occurred the city had adopted the provisions of the general law embraced in chapter 9 of the above title, from article 1086 to article 1096, inclusive. Article 1088 authorizes the city to tax the abutting property owners with as much as three-fourths of the cost of making the street improvements. None of these articles contains any prohibition against taxing the cost of constructing street intersections against the abutting property owners. The evidence tends to show, in this case, that when the cost of paving the street intersections is included as a part of the cost to be taxed against the abutting property owners, their part is still less than three-fourths of the entire cost of the street paving. There is no proof that the costs assessed against appellant's property exceeded the benefits which would result from the paving, or that it was out of proportion to the tax levied against other property owners. The city drew its powers from the general law which it adopted, and from the Acts of the First Called Session of the Fortieth Legislature, p. 489.

■ The next objection is that the city had no power to provide that the payment of the certificates to be issued against property owners should be made in less than five annual installments. Reference is made to article 1102 of the Revised Civil Statutes, which provides that the deferred payments "shall be due and payable in equal annual installments not less than five in number." An examination of chapter 9, title 28, of which that article is a part, shows that this provision was intended to apply to assessments and reassessments made after funds belonging to a city had been invested in making improvements, and where it was necessary to make reassessments in order to correct some irregularity in former proceedings. The provisions under which the city in this instance was proceeding authorize the governing body to provide the time and terms of payment of the assessment against the property owners, without fixing any limitations on the installments.

■ We come, then, to what seems to be the principal question presented in this appeal: Did the city have the power to issue warrants to be used in the payment of its portion of the cost of the street improvements? The record shows that the aggregate amount for which warrants were to be issued was $10,000, and it is conceded that the propriety of issuing those warrants had not been submitted to the voters of the city. As previously stated, those warrants were

to be in denominations of $500 each, payable in future years and from the future revenues of the city.

There are two limitations imposed upon the authority of cities to create debts to be paid from future revenues. One is found in section 5 of article 11 of the Constitution, which provides that "no debt shall ever be created by any city, * * * unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and create a sinking fund of at least two per cent. thereon." The other restriction is found in article 701 of the Revised Civil Statutes. That article provides, in substance, that no county or incorporated city shall issue bonds for any purpose unless a proposition for the issuance of such bonds shall have been first submitted to the qualified voters who are property taxpayers of such county, city or town. Article 717 qualifies that limitation by excepting bonds to the amount of less than $2,000. The authority of municipalities to create debts of this character without first submitting the question to the qualified voters has been so often before the courts of this state that we deem it unnecessary to discuss it at length. In the case of Bridgers v. City of Lampasas (Tex. Civ. App.) 249 S. W. 1083, will be found a collection of pertinent decisions which we think settle the question here involved against the appellant. In a very recent case, Keel, Mayor, et al. v. Pulte, 10 S.W.(2d) 694, that question was again passed upon by the Commission of Appeals, and the judgment of the Court of Civil Appeals in 297 S. W. 241 was reversed. So far as we know, that is the latest expression from our Supreme Court, and is in harmony with the ruling in the Bridgers Case and those contained in the cases there referred to. The power of a city to create such indebtedness without authority from the taxpayers depends upon whether the written evidences of the indebtedness are negotiable or nonnegotiable instruments. If such instruments, no matter by what name they may be called, may be classed as negotiable, they are within the restriction imposed by the statute above referred to. If they are nonnegotiable they are not subject to that restriction. An inspection of the warrants provided for in this case shows that they come within the class of nonnegotiable instruments. and therefore the city was not required to submit the question of whether or not they should be issued to the taxpaying voters affected.

In Keel v. Pulte, above referred to, the court uses this language:

"The power to issue negotiable paper for public improvements, or for money borrowed for the purpose of acquiring such improvements, is a power which is regarded as being beyond the scope of power of the governing body of a city or a county unless it be specially granted. This extraordinary power, when granted, can be exercised only in the mode and for the purposes specified in the grant. Foster v. City of Waco, 113 Tex. 354, 255 S. W. 1104. But the grant of this power does not impliedly deprive the governing body of the authority to make those same improvements on credit, and to issue nonnegotiable interest-bearing obligations of the municipality for the debt thus created, if elsewhere the authority to make the improvements is conferred"—citing Lasater v. Lopez, 110 Tex. 189, 217 S. W. 373; Bridgers v. City of Lampasas (Tex. Civ. App.) 249 S. W. 1084 (writ refused); Payne v. Bank (Tex. Com. App.) 291 S. W. 211; Galveston v. Loonie, 54 Tex. 523. The warrants under consideration in that case are not materially different from those involved in this suit.

Appellant further insists that no sufficient interest and sinking fund to retire the warrants at maturity was provided for. If that statement be true, then appellant has no right to complain of a cloud upon her title arising from the ordinance authorizing the issuance of the warrants. This is not a suit to enjoin the issuance of warrants, but one to remove cloud from title. It is the tax which the city levies for the payment of the warrants which must create the cloud, if there be one. Hence, if no tax has been levied, then no cloud has been created. However, provision was made for the levy of a tax to pay the interest accruing in 1928. The tax-levy clause provided that there should be annually levied, assessed, and collected in due time, form, and manner a tax upon all the taxable property in the city, sufficient to pay the current interest thereon and create a sinking fund sufficient to pay each installment of the principal as the sum became due. The Constitution requires that proper provision be made for the payment of the debt at the time the debt is created. No debt exists until the warrants are issued. City of Austin v. Valle (Tex. Civ. App.) 71 S. W. 414; Mitchell County v. Bank, 91 Tex. 361, 43 S. W. 880; Wade v. Travis County, 174 U. S. 499, 19 S. Ct. 715, 43 L. Ed. 1060. The record in this case fails to show that any warrants or certificates had been issued, or that any work had been performed under the contract.

The motion is overruled.