## ALEXANDER v. MISSOURI STATE LIFE INS. CO.

### No. 4959.

Circuit Court of Appeals, Seventh Circuit.
Dec. 15, 1933.

Rehearing Denied Jan. 30, 1934.

Ralph F. Potter and George C. Bunge, both of Chicago, Ill., for appellant.

Charles O. Rundall, of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and FITZ-HENRY, Circuit Judges.

SPARKS, Circuit Judge.

The only questions presented are whether the trial court erred in admitting certain testimony of medical witnesses, Doctors Lynott and Conley, and if so, whether such erroneous

admissions were sufficiently prejudicial as to warrant a reversal of the judgment.

There is no conflict in the evidence as to the observable circumstances surrounding the death of insured. He was forty-nine years of age, and for twenty years immediately prior to his death had been in good health, with the exception of having had the "flu" six or seven years before his death. On the morning of July 2, 1928, he left Grand Beach, Michigan, on business, and was on his way to Milwaukee, travelling in an automobile which had been driven about a year and a half, and on which the tires had never been changed. He was observed by a witness when he was about three or four miles east of Michigan City, Indiana, driving west on the Dunes concrete highway at a speed of about thirty-five miles an hour. When he was about the distance of a city block west of the Freyer residence which was on the south side of the highway, and in the vicinity where the witness first saw him, decedent's car suddenly turned to the south leaving the highway and turning into and across the circular driveway and lawn immediately west of the Freyer home. The car came to a stop among the trees seven or eight feet beyond the west branch of the driveway, a distance of 125 or 200 feet from where it left the highway. Marks on the concrete highway and on the ground indicated that the car had run over some railroad ties and an old concrete foundation of an abandoned gasoline pump. When witnesses arrived the engine was running, the brake was tightly drawn, and the left rear tire had sustained a blow out. They found decedent slumped over the steering wheel and his hat back of the seat. He was unable to talk but was still breathing. He had a bruise an inch in diameter over his left eye, and another bruise on his left cheek below his eye. These bruises almost surrounded the orbit of the left eye, and had the appearance of having been caused by some blunt, smooth object. He died in about five minutes without regaining consciousness.

The coroner, who was a physician, was called as a witness by appellant, and gave as his opinion, from an examination of the body, that decedent died from a cerebral hemorrhage. This, he said, might occur in a number of ways and at any time, and it might be caused by sudden excitement but could also occur while the subject was asleep. He thought that under all the circumstances it probably happened to decedent when his face came in contact with the object which caused the bruises, and that the wound contributed to the hemorrhage.

Dr. Lynott, at the request of a friend of the family, conducted an autopsy of the body in which the scalp and part of the skull were removed, and his opinion was that death was caused by cerebral hemorrhage. The following question was put to him by appellee, "Did you have an opinion as to whether or not that cerebral hemorrhage resulted from the injury evidenced by the wound?" Thereupon appellant objected to the question on the grounds that it invaded the province of the jury, was not a matter of expert opinion, and was immaterial and irrelevant. The answer was permitted with exception saved to appellant, and witness stated, "From the examination my opinion is, the man died from cerebral hemorrhage due to high blood pressure." A motion to strike was overruled and exception saved.

Dr. Conley, appellee's witness, was asked the following questions premised on the assumption of facts as shown by the evidence with reference to the occurrences immediately before and after the death of Mr. Alexander, to which he made answers as set forth:

"Q. * * * Based upon the above assumption of facts have you an opinion as to whether or not the hypothetical individual received injuries evidenced by the abrasions or bruises which with a reasonable degree of medical certainty might or could have caused the cerebral hemorrhage resulting in the death of the hypothetical individual?

"A. I have.

"Q. What is that opinion? * * *

"The Court: * * * The question is, Doctor, might this injury have caused the hemorrhage or could it have caused the hemorrhage?

"The Witness: It could not.

"Q. * * * Have you an opinion as to whether or not the accident which was evidenced by the abrasions or contusions discovered on the forehead and cheek of the hypothetical individual might or could have had, with a reasonable degree of medical certainty, a causal connection with the death of the hypothetical individual?

"A. I have. * * *

"Q. Now what is that opinion?

"A. My opinion is that there is not any connection."

Appellant moved to strike the answer substantially for the reason that it invaded the province of the jury. The motion was over-

ruled and appellant's exception noted. It is upon the court's rulings with respect to the questions and answers above set forth that appellant bases her assignments of error.

■■ It may be admitted that in the trial of this cause the introduction of testimony should have been governed by the rules of evidence established by the Supreme Court of Illinois. 28 USCA § 724. Nashua Savings Bank v. Anglo-American Co., 189 U. S. 221, 23 S. Ct. 517, 47 L. Ed. 782. It is also true that if there were any inconsistency in the opinions of that court with respect to the admission or rejection of evidence, it was the duty of the District Court to follow the latest adjudications in preference to the earlier ones. Stutsman County v. Wallace, 142 U. S. 293, 12 S. Ct. 227, 35 L. Ed. 1018; Wade v. Travis County, 174 U. S. 499, 19 S. Ct. 715, 43 L. Ed. 1060.

■ In City of Chicago v. Didier, 227 Ill. 571, 81 N. E. 698, 700, the Illinois rule pertinent to the question now before us was quite clearly stated. In that case appellee recovered a judgment against the city of Chicago for injuries caused by a fall alleged to have resulted from permitting a sidewalk to become defective and remain in that condition. There was no dispute that the plaintiff fell and sustained injuries, but it was denied by the city that her physical condition was the result of the injuries which she received from the fall. The court said:

"There is some apparent confusion in the authorities on the question as to whether, in such cases as this, a medical expert may be asked his opinion as to whether the physical conditions of the injured party are the result of the injuries complained of. Where there is a conflict in the evidence as to whether the plaintiff was injured in the manner claimed, it is not competent for witnesses to give their opinions on that subject; but where there is no dispute as to the manner of the injury, and the question is as to whether certain physical conditions were caused by the injury complained of, and the determination of the question involves a special skill or trade, or a knowledge of science that does not come within the experience of laymen possessing the education or knowledge common to those moving in the ordinary walks and engaged in the ordinary occupations of life, then persons possessing the special knowledge, skill, or science may give their opinions on the subject. Appellant contends that the inquiry should be as to whether the injury might have produced the physical conditions, and not whether it did produce them. Expressions will be found in some cases tending to support that view; but the weight of authority in this state, as well as in other jurisdictions, does not support appellant's contention. * * *

"We think the apparent confusion of the authorities arises from a failure to distinguish between cases where the manner in which the injury is received is admitted and cases where the manner of the injury is denied. [Citing Illinois authorities.] * * *

"Numerous authorities of courts of last resort of other states might be cited in support of the rule announced in the authorities above mentioned. The reason given for permitting a properly qualified witness to give his opinion as to what did produce certain results or consequences, and not what might have produced them, is that the fact to be established is, what did cause the conditions found to exist? Where the determination of that question involves scientific knowledge or skill, which is possessed only by those who have given the matter special study, and with which jurors and others engaged in the ordinary avocations of life are unfamiliar, a witness possessing the necessary qualifications may be asked for his opinion as to what did cause the conditions described. Such an opinion is not conclusive, and is subject to be contradicted by other evidence. It is for the jury to determine the weight and value of such opinions, when considered in connection with all the evidence in the case."

The rule therein laid down is fully supported in Chicago Union Traction Co. v. Roberts, 229 Ill. 481, 82 N. E. 401; Fuhry v. Chicago City Railway Co., 239 Ill. 548, 88 N. E. 221; Hanrahan v. City of Chicago, 289 Ill. 400, 124 N. E. 547. It was also recognized by this court as the Illinois rule in Chicago Rys. Co. v. Kramer, 234 F. 245.

In Kimbrough v. Chicago City Railway Co., 272 Ill. 71, 111 N. E. 499, upon which appellant relies, the same rule is referred to with approval. In that case the trial court permitted a medical expert to state his opinion as to the connection between the disease and the tumor, and the Supreme Court held it was error. It will be noted in that case, however, that there was a marked disagreement between the witnesses who saw the accident as to the force of the impact, and that fact no doubt was considered by the Supreme Court as sufficient to constitute a dispute with respect to the circumstances under which the collision occurred. If that case can be considered as narrowing the rule in the Didier Case, which we do not admit, it is certainly contrary to the later decisions of Illinois here-

**4**

inbefore cited. In People v. Rongetti, 338 Ill. 56, 170 N. E. 14, the defendant was charged with murder alleged to have been caused by an abortion, and the evidence was conflicting as to whether an operation had been performed upon the deceased. In the instant case, however, there was no dispute whatever as to the happening of the accident, the manner in which it occurred, and the observable bodily injuries. The controversy concerning which the experts were permitted to testify was as to the result of those bodily injuries, and under the Illinois law we have no doubt that the questions were proper.

Judgment affirmed.